# COURT OF ERRORS AND APPEALS,

## JANUARY TERM,

## 1891.

———•———

### Tomas B. Smith *v.* Israel Riding.

*Construction of Statutes—Collection of Taxes—Powers of Ex-Collectors.*

"An act in relation to the Levy Court of New Castle county," passed April 28, 1891, appointed a receiver of taxes and county treasurer for New Castle county and provided "that the terms and powers of office of the county treasurer and collectors of taxes, who had been appointed or elected by the Levy Court of New Castle county since the first day of February, 1891, be and the same are hereby terminated and ended, and the said offices as now fixed by law are hereby abolished:" *Held*, that said act did not take from an ex-collector of taxes the powers given him by previous statutes to collect for two years after the date of his warrant all uncollected taxes due on his duplicate.

(*June 18, 1891.*)

CASE STATED reserved from the Superior Court, New Castle County.

Amicable Action of Trespass.

It is hereby agreed by and between the above named parties, by their respective attorneys, as follows, to wit:

1. That the above action be docketed as of the May Term, A. D., 1891, with the same force and effect as if a summons had been

regularly issued, served personally on the defendant and duly so returned and the appearance of the defendant duly entered.

2. That the defendant, Israel Riding, was on the twenty-sixth day of February, A. D., 1890, duly appointed by the Levy Court of New Castle County, aforesaid, collector of taxes for New Castle Hundred, in the county aforesaid, and afterwards, to wit, on the third day of June in the year last aforesaid, he duly gave bond with approved sureties, conditioned for the performance of the duties of his said office as then required by law.

3. That afterwards, to wit, on the fourth day of June, in the year last aforesaid the said Levy Court caused to be issued to the said defendant as collector as aforesaid, a duplicate of the assessment list of said hundred transcribed and certified by the Clerk of the Peace for said county with a warrant thereto annexed as then required by law, whereby he was commanded, among other things, to collect from the several persons named in said duplicate, including the said plaintiff, for their county and poor taxes for the year 1890 the following rate per centum on the amount of their respective assessments, and so pro rata, that is to say, the rate of thirty cents per $100 for the county tax, and the rate of ten cents per hundred dollars for the poor tax.

4. That the said plaintiff was assessed for the year 1890 with real estate of the assessed value of twelve hundred dollars as appears in and by said duplicate, and upon the issuing of the said duplicate and warrant as aforesaid to the said defendant, collector as aforesaid, it became and was his duty to collect of the said plaintiff for his county and poor tax for the year 1890 at the rate aforesaid the aggregate sum of four dollars and eighty cents.

5. That after receiving the said duplicate list, the said defendant gave public notice by advertisements, and attended for the purpose of receiving taxes, as required by Section 1 of Chapter

372 of volume 14 of the Laws of Delaware; and afterwards, to wit, on the first day of May, A. D., 1891, he made personal demand upon the said plaintiff for the payment of the said sum of four dollars and eighty cents being the amount of his county and poor taxes as aforesaid.

6. That the said taxes of the said plaintiff being wholly unpaid, the said defendant afterwards, to wit, on the fifteenth day of May, A. D., 1891, for the purpose of collecting the same with costs did seize and take possession of certain personal property of the said plaintiff, to wit, one cow of great value, to wit, of the value of twenty dollars, he, the said defendant, claiming the right by law to levy and distrain upon the same by virtue of the said duplicate and warrant.

7. That the said plaintiff claims that by force and virtue of the Act of the General Assembly of the State of Delaware, entitled "An Act in relation to the Levy Court of New Castle County," passed at Dover, April 28, 1891, all power and authority of the said defendant under the said duplicate and warrant for the collection of the taxes therein mentioned ceased and determined upon the passage of said last mentioned act; and that thereafter the said defendant had no right, power or authority to collect the said taxes of the said plaintiff by the levy or distraint of his said property as aforesaid.

8. That if upon the facts above stated, the Court shall be of the opinion that the defendant on the said fifteenth day of May, A. D., 1891, had the right to levy and distrain as aforesaid upon the said property for the collection of the said taxes of the plaintiff, judgment shall be entered for the defendant for costs; but if the Court shall be of the opinion that the said defendant had not then the right to levy and distrain as aforesaid upon the said property for the collection of said taxes of the plaintiff, judg-

ment shall be entered for the plaintiff for nominal damages and costs.

*W. C. Spruance,* for the plaintiff.

*John Biggs,* for defendant.

WILMINGTON, DEL., June 5, 1891.

And now, to wit, this fifth day of June, A. D., 1891, the foregoing case stated having been read and filed, it is considered by the Court that the questions of law therein contained ought to be decided before all the judges; it is therefore, on the joint application of the parties ordered by the Court, and they do hereby direct that the same shall be heard in the Court of Errors and Appeals, at the next term thereof.

J. P. COMEGYS, Ch. J.
JOHN W. HOUSTON, J.
CHAS. M. CULLEN, J.

*W. C. Spruance,* for the plaintiff:

I. Prior to April 28th, 1891, the date of the passage of the Act, entitled "An Act in relation to the Levy Court of New Castle County" the collection of county and poor taxes of New Castle County was by law committed to collectors of county taxes.

The Levy Court was required, in the month of February in every year, to appoint a collector for each hundred and collection district, who before his appointment was complete, gave bond with sureties as conditioned for the performance of the duties of his office. The term of office was one year.

. *R. C.,* Ch. 8, Sec. 19, Ch. 12, Secs. 1 and 2; *R. C.,* Ch. 8, Sec. 18.

One of the conditions of the collectors bond was that he should pay the taxes he was required to collect, less allowances made to him by the Levy Court, "in the manner, and within the times pre-

scribed by law, or legally appointed by the Levy Court   *   *   *
for that purpose."

*R. C.,* Ch. 12, Sec. 2.

The collector was required to pay the county and poor taxes
in certain proportions, at certain specified dates; the residue of the
county taxes, after the deduction of commissions and delinquencies,
being required to be paid by the first Tuesday of February next
after his appointment, and the residue of the poor taxes, after the
deductions aforesaid, being required to be paid by December 10th,
next after his appointment, subject to the provision that the Levy
Court might, in their discretion, order payment of all, or any of
said taxes, at an earlier day than those appointed as aforesaid.

*R. C.,* Ch. 12, Secs. 7 and 8.

It was the duty of the collector, on the first Tuesday of March
next after the date of his warrant, to render to the Levy Court a
true account of all taxes it was his duty to collect, and of all pay-
ments made, and of all delinquents.

*R. C.,* Ch. 12, Sec. 10.

At the meeting in March in every year the Levy Court was
required to examine, adjust and settle the accounts of the collectors,
making all just allowances, and this adjustment and settlement was
declared to be final; but the Levy Court might, if deemed ex-
pedient, require other accounts of the collectors.

*R. C.,* Ch. 12, Sec. 21.

The statute declared that "A collector of taxes shall hold his
office for the term of one year," (*R. C.,* Ch. 12, Sec. 1)—and there
was no statutory provision which expressly continued his term or
powers of office beyond one year, the provision that "No collector,
nor his executors or administrators shall collect or receive any tax
after two years from the date of the warrant; after that date it
shall be extinguished," (*R. C.,* Ch. 12, Sec. 18) was always under-
stood to imply that a collector had the right and power to collect
and receive taxes for two years after the date of his warrant.

The Act entitled "An Act in relation to the liability of prin-

cipal and surety " passed March 23, 1877, (15 Laws of Del., 398) is confirmatory of the right and power of a collector whose term of office had expired to collect taxes until the end of two years after the date of his warrant.

This Act, among other things, provides, that upon the petition of the sureties of a collector whose official term has expired, and who has not collected and accounted for all the taxes committed to him for collection, the Levy Court may issue an order restraining such late collector from further collection of such taxes, and appoint a collector to collect the residue of the taxes uncollected, by such late collector and compel the delivery of the duplicate and warrant to the person so appointed.

It is, however, difficult to see how a collector, after his term of one year had expired, could collect and receipt for taxes without violating the provisions of the Act, entitled " An Act in relation to the collection of taxes in this State," passed April 10, 1873 (R. C., pg. 90.)

Section 3 of said Act required the Levy Court to procure a seal, of a prescribed size and device; for the use of the collectors of each hundred or collection district, and to deliver the same to the collector with his duplicate. The collector was required to give receipts for all taxes received by him, and to stamp all such receipts with said seal. The collector was given the custody of said seal during the term he should remain in office, and upon going out of office, he was required to deliver said seal to the Levy Court.

Section 5 of said Act made it a felony for any person other than a collector to use said seal upon any tax receipt.

II. By said Act of April 28, 1891, the old system of collecting taxes of New Castle County was annulled, and a wholly new system substituted.

Section 2 of said Act is as follows:

"That the terms and powers of office of the County Treasurer and Collectors of Taxes, who have been appointed or elected by Levy Court of New Castle County since the first day of February, 1891, be and the same are hereby terminated and ended, and the said offices as now fixed by law, are hereby abolished. And from and after the passage of this Act the said offices of County Treasurer and Collectors of Taxes of New Castle County as now fixed by law, are hereby declared to be abolished."

By said Section not only were "the terms and powers of office" of the collectors appointed since February 1, 1891, terminated and ended, but said office of collector was abolished.

If any doubt could exist as to the effect of the first clause of said Section, it is removed by the second clause which declares, that "from and after the passage of this Act the said offices of County Treasurer and Collectors of Taxes of New Castle County as now fixed by law, are hereby declared to be abolished."

No language could more clearly express the purpose of the Legislature to wholly and immediately abolish the offices of collector of taxes as it theretofore existed.

The said office having been abolished by said Act, no person could thereafter hold the office or exercise any of its powers, either during the term for which he had been appointed or afterward.

The continuing powers which collectors formerly possessed or exercised after the expiration of their terms of office, certainly were of no higher character than those which they possessed and exercised during their terms of office, and both were wholly annulled by the abolition of the office of collector.

After the passage of said Act the only duty or power of a collector of taxes theretofore appointed—whether his term of office under the old law had, or had not expired—was to settle his accounts with the Levy Court, if he had not before done so, and pay over to the County Treasurer appointed under said Act, the balance of the taxes due from him.

16

Section 14 of said Act provided that " All balances of taxes as settled and determined by the present Levy Court, as due from the county collectors shall be paid to the said last mentioned County Treasurer within twenty days after his appointment.   Upon default in such     *     *     *     payments the said Levy Court shall have full power and authority to proceed on the official bonds of such     *     *     *     collectors.

The settlements with the Levy Court, mentioned in this section, are obviously the settlements which the collectors were, as we have seen, required to make with the Levy Court in March, or at such other times as the Levy Court might deem expedient.

One effect of said Section 14, was to extend the time for the payment of the balances of taxes due from said collectors to any time within twenty days after the appointment of the County Treasurer as provided in said Act.

By force of Section 2, the office of collector was abolished, and as a consequence thereof all collectors theretofore appointed were deprived of the power thereafter to collect taxes—and by force of Section 14, it became illegal for them to have in their hands any moneys due to the county for taxes after the expiration of twenty days from the appointment of the County Treasurer as provided by said Act.

III. " If a statute is valid it is to have effect according to the purpose and intent of the law maker.   The intent is the vital part, the essence of the law.   This is the intention embodied and expressed in the statute.   A legislative intention to be efficient as law must be set forth in a statute     *     *     *     If a statute is plain, certain and unambiguous, so that no doubt arises from its own terms as to its scope and meaning, a bare reading suffices, then interpretation is needless     *     *     *     .   The sole authority of the legislature to make laws is the foundation of the principle that courts of justice are bound to give effect to its intention. When that is plain and palpable they must follow it implicitly.

The rules of construction with which the books abound apply only where the words used are of doubtful import."

*Sutherland on Statutory Constitution*, Sec. 234, 235, 238 ; *Sturges v. Crowinshield.*

IV. The abolition of the office of collector by the clear and express terms of Section 2 of said Act, carried with it the abolition of all of the powers, incidents and privileges of the office, which were formerly exercised during the collectors term, or for a limited time thereafter.

The failure of the legislature to provide any new agency, cannot annul the express provisions of the Act, by which the old agency was obliterated. The failure to create a new agency for this purpose is a *casus omisus* which cannot be supplied by the Court.

" A *casus omisus* can in no case be supplied by a Court of law ; for that would. be, to make laws. Judges are bound to take the Act of Parliament as the legislature have made it.

*Dwarris on Statutes*, pg. 711 ; 1 T. R., 52.

" It results from the judicial function of expounding the law as it is, that the courts cannot extend it to meet a case which has clearly and undoubtedly been omitted to be provided for. As the judicial committee said in *Crawford v. Spooner* (6 Moor's P. C., 9), " we cannot aid the legislature's defective phrasing of an Act; we cannot add and mend, and, by construction, make up deficiencies which are left there ;" in other words, the language of statutes, but more especially of modern acts, must neither be extended beyond its natural and proper meaning, in order to supply defects, nor strained to meet the justice of an individual case. If the language is plain, precise and unambiguous, there is no room for construction, and the particular intention so expressed is alone to be carried into effect."

*Sutherland on Statutory Construction*, Sec. 431.

V. Considerations of hardship, inconvenience or detriment of

a public or private character cannot effect the construction of a statute where, as in this case, its language is express and plain. *Sutherland*, Secs. 321, 324.

" Where that which is directed to be done is within the sphere of legislation, and the terms used clearly express the intent, all reasoning derived from the supposed inconvenience, or even adsurdity, of the result is out of place. It is not the province of the courts to supervise legislation and keep it within the bounds of propriety and common sense." *Ib.*, Sec. 338.

" The wisdom of a statute is not a judicial question; nor can courts correct what they may deem excesses or omissions in legislation, or relieve against the occasionally harsh operation of statutory provisions without danger of doing more mischief than good." *Ib.*, Sec. 235.

" When the meaning of a statute is clear, and its provisions are susceptible of but one interpretation, that sense must be accepted as the law; its consequences, if evil, can only be avoided by a change of the law itself, to be effected by the legislature and not by judicial construction. *Ib.*, Sec. 238.

VI. The general scope and policy of the said Act was to inaugurate a new system for the collection of county taxes.

The former system of collections by collectors had afforded great opportunities for fraud and injustice, and had long been the subject of general complaints.

In view of this aspect of the case, it is in the highest degree improbable that the legislature contemplated the continuance in the hands of the old collectors of any part of their former powers.

" The practical inquiry is usually what a particular provision, clause or word means. To answer it one must proceed as he would with any other composition, construe it with reference to the leading idea or purpose of the whole instrument. The whole and every part must be considered. The general intent should be kept in view in determining the scope and meaning of any part."
*Sutherland*, Sec. 239, 240, 241.

" Where the meaning of a statute or any statutory provisions is not plain, a court is warranted in availing itself of all legitimate aids to ascertain the true intention ; and among them are some extraneous facts. The object sought to be accomplished exercises a potent influence in determining the meaning of not only the principle but also the minor provisions of a statute. To ascertain it fully the court will be greatly assisted by knowing, and it is permitted to consider, the mischief intended to be removed or suppressed, or the necessity of any kind which induced the enactment." Ib., Sec. 292.

VII. An examination of the provisions of the said Act, as found in Sections 8, 15 and 17, designed to insure the fidelity of the officers by said Act entrusted with the collection and custody of the county taxes, will aid us in the consideration of the question as to the continuation of the powers of the collectors.

There is no provision whatever in said Act as to the times and modes of payment or deposit by collectors theretofore appointed, except as to the payment or balances of taxes required by Section 14 to be made to the County Treasurer within twenty days after his appointment—and no provision whatever as to the inspection or audit by the comptroller of the books or accounts of such collectors. In view of these important provisions of the Act in reference to collectors of delinquent taxes and the county treasurer and receiver of taxes, and the entire absence of any similar provisions as to the collectors theretofore appointed, it is impossible to believe that it was the intention of the legislature to continue in them the power to collect and hold taxes.

VIII. The effect of Section 24 of said Act is not to continue the collectors in office or save to them their former powers to collect taxes, but merely to preserve the remedy upon their official bonds.

The provisions of said Section authorizing proceedings upon

the official bonds of the collectors, " for any violation of the conditions thereof until all the accounts of said officer, and all the business of his said office shall be finally and satisfactorily settled with the proper officers as is designated under the provisions of this ·Act," refer to the duties imposed upon the collectors, by Section 14 of said Act.

The construction which we insist should be given to the said Act does not vacate, annul or invalidate any official bond theretofore given by any collector either as to the principal or surety therein.

Before the passage of the said Act, the liability of delinquent collectors appointed in prior years, and their sureties, upon their official bonds had become complete.

By the warrants issued to said collectors they were required to pay the taxes which they were directed to collect, within the times appointed by law ; a condition of their bonds was that they should pay said taxes within the times prescribed by law ; they were required by law to render to the Levy Court accounts of said taxes on the first Tuesday in March next after their appointment ; the Levy Court was required in said last mentioned month to make final adjustment and settlement of their accounts and the times appointed or prescribed by law·for the payment of the residue of said taxes had all expired before the said 28th day of April, 1891, the date of the passage of said Act.

It is not probable that the county will ultimately suffer any loss by reason of the failure of said Act to provide a means for the collection of uncollected taxes of former years, as the official bonds of the collectors will furnish to the county full indemnity.

IX. We have seen, the terms of office of all collectors appointed in 1890, and in all prior years, had by limitation of the law then in force expired and ended before the passage of said Act.

The said Act vacated and ended only the terms of office of the collectors appointed in 1891.

It is impossible to believe that Section 24 saved to the collectors appointed in 1891 the power to collect taxes, but this class of collectors only is embraced in the terms of said section.

X. The last section of said Act, is as follows :

"Section 25. That all laws or parts of laws inconsistent with, or supplied by this Act, are hereby repealed."

As has been shown, the continuance in force of the laws, or parts of laws, which expressly or impliedly conferred upon the collectors appointed by the Levy Court power to collect taxes, either during their terms of office or afterwards, would be wholly inconsistent with the express provisions and the general scope and intention of the Act of April 28, 1891, which supplied, even though defectively and imperfectly, a new system for the collection and administration of the revenues of the county.

XI. We therefore insist, that by force and virtue of the said Act of April 28, 1891, all power and authority of the defendant under the duplicate and warrant issued to him for the collection of the taxes of 1890, ceased and determined upon the passage of said Act, and that thereafter he had no right, power, or authority to collect said taxes, or any of them, by the levy or distraint of the property of the taxables, and therefore that the seizure by the defendant of the property of the plaintiff on the 15th day of May, 1891 for the collection of his taxes, constituted a trespass and entitles him to a judgment for nominal damages and costs.

*John Biggs*, for defendant :

The question to be decided in this case is, did the Act of the General Assembly entitled " An Act in relation to the Levy Court of New Castle County " passed at Dover, on April 28th, A. D., 1891, deprive the defendant of the right to levy and distrain upon the said property for the collection of the said taxes of the plaintiff.

The only sections of the said Act, that apparently throw any light on this question, are Sections 1, 2, 14 and 24, which are as follows, viz:

Section 1. That from and after the first Tuesday in January, A. D., 1893, the terms and powers of office of the Levy Court Commissioners, now composing the Levy Court of New Castle County, shall be and the same are hereby declared to be terminated ended, and all trustees of the poor, constables and all other officers and agents, except the County Treasurer, and collectors of taxes, heretofore appointed or elected by the said Levy Court, whose terms of office have not yet expired, and those who may hereafter be appointed or elected prior to the said first Tuesday in January, A. D., 1893, shall continue to hold exercise and enjoy their said offices until their terms shall respectively expire, as now provided by law.

Section 2. That the terms and powers of office of the county treasurer and collectors of taxes, who have been appointed or elected by the Levy Court of New Castle County since the first day of February, 1891, be and the same are hereby terminated and ended, and the said offices as now fixed by law, are hereby abolished. And from and after the passage of this Act the said offices of county treasurer and collectors of taxes of New Castle County, as now fixed by law, are hereby declared to be abolished.

Section 14. That all funds in the hands of the present county treasurer and treasurer of the poor shall be transferred to the county treasurer appointed under this Act, within five days after he shall have been appointed and shall have qualified and all balances of taxes as settled and determined by the present Levy Court, as due from the county collectors shall be paid to the said last mentioned county treasurer within twenty days after his appointment. Upon default in such transfers

or payments the said Levy Court shall have full power and authority to proceed on the official bonds of such treasurers and collectors; and in case of full payment aforesaid as certified by the comptroller, the said Levy Court, or their attorney, shall have authority to and shall satisfy the said official bonds."

"Section 24. That nothing in this Act shall be construed so as to vacate, annul or invalidate any offical bond heretofore given by any officer whose term of office is herein vacate, and ended ·either as to the principle or any surety therein, but the same shall have full force and effect and may be proceeded upon by the Levy Court Commissioners for any violation of the conditions thereof until all the accounts of said officer, and all the business of his said office shall be finally and satisfactorily settled with the proper officers as is designated under the provisions of this Act."

Section 1 leaves the County Treasurer and Collectors of taxes, to be dealt with by the subsequent provisions of the Act of April 28, 1891, or leaves them in the same status as fixed by law prior to April 28, 1891.

.Section 2 provides "That the terms and powers of office of the county treasurer and collectors of taxes, who have been appointed or elected by the Levy Court of New Castle County since the first day of February, 1891, be and the same are hereby terminated and ended," &c.

Thus far this section clearly refers to the county treasurer and collectors of taxes appointed or elected since the first day of February, 1891. It then proceeds with the language "and the said offices as now fixed by law are hereby abolished."

What offices as now fixed by law are abolished? Why clearly "the said offices," to wit, "the county treasurer and collectors of taxes, who have been appointed or elected by the Levy Court of New Castle County since the first day of February, 1891."

The last clause of said section 2 viz; "And from and after the passage of this Act the said offices of county treasurer and col-

lectors of taxes of New Castle County as now fixed by law, are hereby declared to be abolished," is merely explanatory of the first and clearly refers to the County Treasurer and Collector of Taxes appointed since the first day of February, 1891. It states "said offices" and none but those appointed or elected since the first day of February, 1891, are previously named.

The obvious intent of the reiteration was to fix beyond a doubt that the terms and powers of office of the County Treasurer and Collectors of Taxes appointed or elected since the first day of February, 1891, should expire "from and after the passage of this Act" to wit, from and after April 28, 1891. It must therefore be concluded that Section 2 refers solely to the County Treasurer and Collectors of Taxes who have been appointed or elected since the first day of February, 1891. If the general assembly had have intended to include the collectors for 1890, it would have so stated and would not have left this conclusion to be drawn from a strained interpretation.

The term of office of a collector is fixed by Section 1 of Chapter 12 of the Revised Code, as follows, viz:

"Section 1. A collector of taxes shall hold his office for the term of one year." It is further provided by Section 7 of the said chapter, as follows, viz:

Section 7. Every collector shall pay to the county treasurer the county tax as follows: One-third part by the first day of July; one other third part by the first day of October; and the residue, after deducting commissions and delinquencies, by the first Tuesday of February next after his appointment; and the road tax, as follows: one-half by the first day of June; and the residue, after such deductions, by the first day of October next after his appointment.

He shall pay to the treasurer of the poor, the poor tax as follows: one-third part by the first day of July; one other third part

by the first day of October, and the residue, deducting as aforesaid, by the tenth day of December next after his appointment."

The law thus contemplates that the defendant, who was appointed to collect the taxes for the year 1890, performed the duties for which he was appointed, and was out of office long before the passage of the Act of April 28th, 1891. ·His legal liability for all taxes due the county began on the first Tuesday of last February, and his sureties then became responsible for the taxes due the county and then remaining unpaid. If in contemplation of the law his term of office as a collector had expired, he was already out of office and could not therefore be legislated out.

It is provided by Sections 10 and 18 of said chapter 12, as follows, viz :

"Section 10. He shall, on the first Tuesday of March next after the date of his warrant, render to the Levy Court a true account of all taxes it was his duty to collect, and of all payments made, and of all delinquents."

"Section 18. No collector, nor his executors or administrators, shall collect or receive any tax after two years from the date of the warrant, after that date it shall be extinguished. Nor shall he at any time, collect or receive any tax allowed as delinquent, but the same shall be extinguished."

While thus in contemplation of law the term of office of the defendant had expired, and last March was the latest period for his final payment and settlement of any of the taxes due the county and remaining unpaid, yet, by implication of law he is clearly given the authority to recoup himself by collecting the taxes that remain unpaid, until the expiration of the two years from the date of his warrant, after which time they are extinguished. If given the authority to collect until the expiration of two years from the date of his warrant, he must be clothed with the authority to collect by levy and distress. The right to thus collect by levy and distress until the expiration of the two years from the date of his warrant,

is therefore not inconsistent with the theory that, in contemplation of law, he was really out of office when the Act of April 28th, 1891 was passed. While really out of office, the right to 'thus re-coup himself is in line with certain functions that ex-sheriffs and ex-constables may perform.

A late sheriff or a late constable, while out of office, may still perform certain functions, pertaining to their late offices. So with this defendant. His term of office expired before the passage of the Act of April 28, 1891; in contemplation of law his duties have been performed, but he still has a quasi-official existence, which enables him to collect by levy and distress unpaid taxes until the expiration of the two years next after the date of his warrant.

The object of this section was clearly to provide for the proper transfer of the county's funds to the " Receiver of Taxes and County Treasurer " an office created by section 6 of the said Act of April 28th, 1891. It must be borne in mind that a County Treasurer and Treasurer of the Poor had been elected after February 1st, 1891, and before April 28th, 1891, and were in possession of certain funds belonging to the county. Provision had to be made for the transfer of these funds to the proper officer, and such provision was thus made by section 14.

Section 14 further provides " and all balances of taxes as set-tled and determined by the present Levy Court, as due from the County collectors shall be paid to the said last mentioned County Treasurer within twenty days after his appointment," &c. This provision evidently refers to the collectors for 1890, for they were the only County Collectors whose accounts had been " settled and determined by the present Levy Court." The collectors of taxes appointed since February 1, 1891, had not up to the time of pas-sage of the Act of April 28, 1891, received their duplicates and warrants, and therefore they could have collected no taxes belong-ing to the county; and inasmuch as the Act of April 28, 1891, abolished their offices, it was not necessary to make any provision

for their transferring any taxes to the Receiver of Taxes and County Treasurer, for they had not, and could not collect any.

This section therefore simply provides for the collectors for 1890, paying over to the Receiver of Taxes and County Treasurer, within twenty days after his appointment, " all balances of taxes, as settled and determined by the present Levy Court." Which payments should have been made to the old County Treasurer not later than the first Tuesday of February, 1891.

The Legislature thus recognizing that certain funds of the county were in the hands of the old County Treasurer and Treasurer of the Poor, and that a large portion of the taxes for 1890, had not been paid over by the collectors, further provided that " upon default in such transfers or payments the said Levy Court shall have full power and authority to proceed on the official bonds of such treasurers and collectors; and in case of full payment aforesaid as certified by the comptroller, the said Levy Court or their attorney, shall have authority to and shall satisfy the said official bonds."

It thus appears by this section that in contemplation of the Legislature the terms of office of the collectors for 1890 had expired, and the balances of taxes due from them had been settled and determined by the present Levy Court; but this, in no way, interferes with the provisions of section 18 of chapter 12, of the Revised Code, which allows them, or their executors or administrators, two years from the date of their warrant to collect the taxes and thus enables them to recoup themselves, by collecting taxes which during their first year they may have been unable to collect.

If the provisions of the Act of April 28, 1891, thus far leave any doubt of the intention of the General Assembly not to interfere with the collectors for 1890, in collecting any taxes remaining unpaid; such doubt must certainly be removed by section 24 of the said Act of April 28, 1891, which is as follows, viz:

" Section 24. That nothing in this Act shall be construed so as to vacate, annul or invalidate any official bond heretofore given by any officer whose term of office is herein vacated and ended, either as to the principal or any surety therein, but the same shall have full force and effect and may be proceeded upon by the Levy Court Commissioners for any violation of the conditions thereof until all the accounts of the said officer, and all the business of his said office shall be finally and satisfactorily settled with the proper offi-cers as is designated under the provisions of this Act."

This section preserves the official bond of the defendant with its " full force and effect." It thus preserves its condition.

The duplicate and warrant thus become part of the condition of the bond, for it is provided that the said defendant " shall faithfully and diligently collect all the rates and taxes which he shall, according to the duplicate and warrant to be issued to him as such collector, be required to collect."

The General Assembly therefore in preserving the bond of the defendant, preserved the duplicate and warrant issued to him on the fourth day of June, 1890. And in preserving his said duplicate and warrant, it preserved his office as a collector, and with it authority to levy and distrain upon the said property of the defendant for the said taxes.

It cannot be conceived that the General Assembly intended to abolish the office of the defendant, and at the same time continue in " full force and effect " his official bond. For his bond being inseparable from his duplicate and warrant, he must be given the authority to fulfill the conditions of his bond, according to his duplicate and warrant.

It must be borne in mind that the present Levy Court settled, as required by law, in March last with the defendant. His allowances for delinquencies, commissions and otherwise, were then made and he with his bondsmen then became chargeable with the balance due. There is no necessity for a " provision in the Act for the examination by the County Comptroller of " his books or accounts,

and such a provision would be superfluous, for the defendant, or his bondsmen, must pay the amount so fixed and determined by the present Levy Court, to the Receiver of Taxes and County Treasurer.

Let us look at what is carried with the conclusion that the General Assembly intended to abolish the office of the defendant. No one can allege that it was the intention to extinguish the taxes for 1890 that remain unpaid, and yet this must necessarily follow such a conclusion. If the said taxes are not extinguished they are collectable, and if collectable they can be collected only by the collectors for 1890, because on their duplicates alone said taxes are entered, and can not be entered on any others. To say that the office of the defendant has been abolished, that he can not collect by levy and distress, this tax which remains unpaid, and at the same time say that he or his bondsmen must pay the balance on his duplicate, that remains uncollected, is absurd.

Therefore to conclude that the General Assembly intended to deprive the defendant of the right to levy and distrain upon the said property for the collection of the said taxes of the plaintiff, and to abolish his office, is to conclude that there are no means for collecting the sixty thousand dollars due the county and remaining unpaid, and that it was therefore the intention of the Legislature that the same should be lost to the county.

To give the Act of April 28, 1891, the interpretation that the defendent cannot levy and distrain upon the said property of the plaintiff, for the said taxes, would be to make the said Act retroactive. The general presumption is against the retroactive operation of a statute. "Upon the presumption that the Legislature does not intend what is unjust rests the leaning against giving certain statutes a retrospective operation. *Nova constitutio futuris formam imponere debet, non præteritis.* They are construed as operating only on cases or facts which come into existence after the statutes were passed, unless a retrospective effect be clearly intended. Indeed, the rule to be derived from the comparison of a vast number of judicial utterances upon this subject, seems to be, that, even in

the absence of constitutional obstacles to retroaction, a construction giving to the statute a prospective operation is always to be preferred, unless a purpose to give it a retrospective force is expressed by clear and positive command, or to be inferred by necessary, unequivocal and unavoidable implication from the words of the statute taken by themselves and in connection with the subject-matter, and the occasion of the enactment, admitting of no reasonable doubt, but precluding all question as to such intention."

*Endlich on the Interpretation of Statutes,* Sec. 271 ; *Peters v. Massey,* 33 Gratt. (Va.), 368 ; *Bedford v. Shilling,* 4 Serg. & R., 401, 403 ; *Taylor v. Mitchell,* 51 Pa. St., 209, 212 ; *Albee v. May,* 2 Paine, 74 ; *Bay v. Gage,* 36 Barb., 447 ; *People v. Supervisors of Essex,* 70 N. Y., 228 ; *U. S. v. Heth,* 3 Cranch, 399 ; *Garrett v. Wiggins,* 2 Ill., 335 ; *Mason v. Finch,* 3 Ill., 223 ; *Guard v. Rowan,* 3 Ill., 499 ; *Smith v. Auditor General,* 20 Mich., 398 ; *Plumb v. Sawyer,* 21 Conn., 351 ; *Hastings v. Lane,* 15 Me., 134 ; *Murray v. Gibson,* 15 How., 421 ; *Harvey v. Tyler,* 2 Wall., 329 ; *Chew Heong v. U. S.,* 112 ; U. S., 536 ; *Whitney v. Hapgood,* 10 Mass., 437 ; *Somerset v. Dighton,* 12 Mass., 382.

It is chiefly when the enactment would prejudicially affect vested rights, or the legal character of past transactions, that the rule in question prevails. Every statute, it has been said, which takes away, or impairs vested rights acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect of transactions or considerations already past, must be presumed, out of respect to the Legislature to be intended not to have a retrospective operation."

*Endlich on the Interpretation of Statutes,* Sec. 273 ; *McMaster v. State,* 103 N. Y., 547 ; *Albee v. May,* 2 Paine, 74 ; *Dash v. Van Kleek,* 7 Johns (N. Y.), 477 ; *Sayre v. Wisner,* 8 Wend. (N. Y.), 661 ; *Bedford v. Shilling,* 4 Serg. & R. (Pa.), 401 ; *State v. Atwood,* 11 Wis., 422 ; *Bowen v. Striker,* 100 Ind., 45 ; *Calder v. Bull,* 3 Dallas, 386, 390.

" Before adopting any proposed construction of a passage sus-

ceptible of more than one meaning, it is important to consider the effects or consequences which would result from it, for they often point out the genuine meaning of the words.

There are certain objects which the Legislature is presumed not to intend; and a construction which would lead to any of them is therefore to be avoided. It is found sometimes necessary to depart, not only from the primary and literal meaning of the words, but also from the rules of grammatical construction, when it is improbable that they express the real intention of the Legislature; it being more reasonable to hold that the Legislature expressed its intention in a slovenly manner, than that it intended something which it is presumed not to intend."

" It is in the last degree improbable that the Legislature would overthrow fundamental principles, infringe rights, or depart from the general system of law, without expressing its intention with irresistable clearness; and to give any such effect to general words, simply because, in their widest and perhaps natural sense, they have that meaning, would be to give them a meaning in which they were not really used."

*Endlich on Interpredation of Statutes*, Sec. 113; *U. S. v. Fisher*, 2 Cranch, 390; *Hines v. R. R. Co.*, 95 N. C., 434; *Arthur v. Bokenham*, 11 Mod., 150; *Lee v. Formen*, 3 Metc. (Ky.), 114; *McAfee v. R. R. Co.*, 36 Miss., 669; *Paramore v. Taylor*, 11 Gratt (Va.), 220; *Schepp v. City of Reading*, 2 Woodw. (Pa.), 460; *Kerlin v. Bull*, 1 Dall. (Pa.), 175; *Pickering v. Day, et al.*, 3 Houston, 474.

.To place the most favorable interpretation, for the plaintiff, on the Act of April 28, 1891, and assume for sake of the argument, that the words used in " their widest and perhaps natural sense " abolished the office of the defendant, the conclusion must still remain that the said Act is at least " susceptible of more than one meaning," and may to say the least be interpreted, with equal fairness, as not abolishing the office of the defendant.

Then again the General Assembly can not be presumed to

have intended to abolish or take away the power of the collectors for 1890 to collect, because they have not, by *express* language done so. Especially is this so, when we observe that they have used apt and express words to vacate and abolish the offices of the collectors appointed or elected since the first day of February, 1891 ; and that express language is confined to those collectors alone. Therefore as all parts of the statute must be construed with reference to each other, when we find no express provision like that referred to, used with reference to collectors appointed before the first day of February, 1891, the conclusion is fair, that it was not intended to abolish such. The General Assembly has indicated by what language it expresses its intent to abolish an office, in that used in its abolishment of the offices of the collectors appointed or elected since the first day of February, 1891, and it fails to use that language with reference to any other. When it wants to abolish an office it does so by referring to the office holder; it does not abolish an office in the abstract merely—an office does not exist in the abstract and apart from some one who holds it.

Then again the defendant's office had expired by law, and the power to collect survived him, by law, for one year. The power attached to him personally to enable him to recoup himself, and it would survive to his executors or administrators, by the same law ; but no one would say that the executors or administrators held the office of collector, or was abolished by the Act in question, or that the power of the executors or administrators under such circumstances to collect, was taken away or abolished by any language therein contained.

*Per Curiam.* The question to be decided is whether Israel Riding, the defendant, who in the month of February, 1890, was duly appointed collector of taxes of New Castle hundred, in New Castle county, and his official bond given and approved, and a duplicate of the assessment of the said hundred, with a warrant thereto annexed, dated on the first Tuesday of April, 1890, issued to him

by the Levy Court of New Castle county, has the power to collect, for the space of two years from the date of such warrant, the residue of the taxes uncollected by him, and not allowed as delinquent, which, according to such duplicate and warrant, he was required to collect. Let us first consider the principle involved historically. The system of levying and collecting county taxes in the several counties of this state prior to the act of the general assembly entitled " An act in relation to the levy court of New Castle county," passed April 28, 1891, has remained the same in its essential features since the early colonial period, and no important alteration has been made in it (prior to the passage of the last-mentioned act) since the enactment of a law entitled " An act concerning the Levy Court, clerk of the peace, assessors, collectors, and county treasurers," passed February 4, 1825, and being Chapter 278, Vol. 6, Laws of Delaware. The Levy Court in each of the counties was empowered and required annually to settle the amounts necessary to be raised for all the local purposes for the current year, and to apportion and lay such amounts, known as county, road, and poor taxes, upon the rates of persons and valuations of real and personal property in the several hundreds, as the same should stand upon the assessment lists as corrected and perfected by the said Levy Court. In the month of February in every year, the Levy Court appointed a collector for each hundred in the county, who was required to give an official bond, and to whom was issued by the said Levy Court, on or before the first Tuesday in April, a duplicate of the assessment list of the hundred for which such collector should have been appointed, with a warrant annexed to such duplicate, which expressed his powers and duties, and upon the proper execution of such warrant or writ was conditioned his official bond. Each collector was required to pay over to the officers authorized by law to receive the same the amount of all the taxes committed to him for collection, excepting only so far as allowances should be made to him by the Levy Court for delinquencies, commissions, or otherwise, on or before the first Tuesday of February next after his ap-

pointment, proportional payments being required before that date, and the Levy Court having the power to order payment of all or any of the said taxes at an earlier day. The term of office of each collector was expressed to be for one year, and he was required to make his final settlement with the Levy Court on the " first Tuesday of March next ensuing the issuing and date of his warrant," and the Levy Court was required to make their allowance of delinquencies at such March session. It was expressly provided, however, in the above-mentioned act, being Chapter 278 of Volume 6 (the provisions of which appear in the digest or in the revised edition of Delaware Laws published in 1829 under the same title), that " a person who shall be appointed collector and to whom a duplicate and warrant shall be issued and delivered, or his executors or administrators, shall have and may exercise all the authority and powers granted by this act, and proceed by all the means herein prescribed for the collecting, levying, and making of the rates required according to such warrant and duplicate to be collected, for the space of two years from the date of such warrant ; but no delinquencies shall be allowed to any collector except by the Levy Court and Court of Appeal, when sitting as a Court of Appeal, in March next ensuing the date of his warrant, and at no other time whatever." Provision was also made for the death, removal, or misbehavior of a collector, by authorizing the Levy Court, upon the application of his sureties or executors or administrators, as the case might be, to appoint a collector in the place of such collector, and compel the delivery to him of the warrant of such collector, or to issue a new warrant, to bear the same date with the original warrant and duplicate for the year.

Except by the repealing chapter of the Revised Statutes of 1852, none of the above-mentioned provisions have been repealed or modified prior to April 28, 1891, save that in an act entitled " An act to amend the election laws of the State of Delaware," passed February 27, 1843, and being Chapter 491, Vol. 9, Laws of Delaware, it was provided by Section 2 thereof " that for the

purpose of preventing frauds by the pretended receipt of old taxes, and by the antedating of receipts for tax. that no collector in this State shall collect any tax upon his duplicate after two years from the date of his warrant; but that after the lapse of two years from such date every such tax shall be extinguished, and no collector shall have power to give a receipt therefor." And the act further provided for the extinguishment of taxes returned as delinquent, and prescribed penalties for any violation of its provisions by a collector. And again, an act entitled " An act in relation to the liability of principal and surety," passed March 23, 1877, and being Chapter 342, Vol. 15, Laws of Delaware, prescribed at length the remedy of the sureties on a collector's bond, by application to the Levy Court, in certain contingencies, for his removal, and the appointment of another collector in his place, and also provides for a similar application in the case of a collector whose term has expired, and who shall not then have collected all the taxes committed to him for collection, giving the Levy Court power to issue an order restraining such late collector from the further collection of any taxes committed to him, and to appoint " the collector resident in said hundred, or any other citizen of the hundred, to collect the residue of the taxes uncollected by such late collector." In the Revised Statutes of 1852 the provisions of the antecedent law in relation to the Levy Court, clerk of the peace, assessors, collectors, and county treasurers were re-arranged and re-enacted in chapters appropriately headed; all those above cited being placed either in Chapter 8, entitled " Of the Levy Court," or in Chapter 12, entitled " of Collectors," and so appear in Chapters 8 and 12 of the Revised Code of 1874. No change in phraseology, or omission incident to such rearrangement, requires attention in this connection, except that the provision above recited, continuing beyond his term of office the powers of a late collector, or his executors or administrators, in execution of his warrant, was omitted; and this extension of authority was left to rest upon the implication contained in the limitation expressed in Chapter 491, Vol. 9, Laws of Delaware,

which is re-enacted in Section 18 of Chapter 12 of the Revised Statutes of 1852, and of the Revised Code of 1874. The collector was empowered and commanded to collect by distress of the property and arrest of the person; of which harsh and summary method of collection, it has been well said; " This method of collecting taxes is as well eseablished by custom and usage as any principal of the common law." A similar practice prevailed in all the colonies from the first dawn of their existence; it has been continued by all the states since their independence, and had existed in England from time immemorial. Indeed, it is necessary to the existence of every government, and is based upon the principle of self-preservation.

Before determining whether the powers of a late collector, under a warrant issued to him for the collection of taxes for the year 1890, are affected by the act entitled " An act in relation to the Levy Court of New Castle county," passed April 28, 1891, it will be necessary to consider what were the nature and extent of his powers, if any, at the time of the passage of said act. Section 1, Chapter 12, of the Revised Code provides that " a collector of taxes shall hold his office for the term of one year." Section 19, Chapter 8, *Id.*, requires the Levy Court to appoint a collector for each hundred in the month of February in every year. (In the case of divided hundreds, collection districts should be substituted for hundreds.) Section 7, Chapter 12, *Id.*, prescribing the dates and proportional amounts of the payments required to be made by each collector, provides that the residue, after deducting commissions and delinquencies, shall be paid by the first Tuesday of February next after his appointment (before the end of his term), or earlier, at the discretion of the Levy Court. (This provision in Section 8.) In Section 18, Chapter 8, *Id.*, the form of warrant, set out at length, requires the collector to pay the amount which, according to the terms of his warrant and annexed duplicate, he was required to collect and pay, in the manner and within the time appointed by law in that behalf, the same being provided in Section

7, above recited in part. In Section 2, Chapter 12, *Id.*, the form of the condition of the official bond is given,—conditioning the bond upon the execution of the warrant, and reciting the manner of payment. Section 10, Chapter 2, *Id.*, provides that " he shall on the first Tuesday of March next after the date of his warrant render to the Levy Court a true account of all taxes it was his duty to collect, and of all payments made, and of all delinqnents." Section 21, Chapter 8, *Id.*, provides that " at the meeting in March in every year the Levy Court shall examine, adjust, and settle the account of the collectors, making all just allowances, and the adjustment and settlement shall be final; and the court, if deemed expedient, may require other accounts from the collectors. They shall at the said meeting examine and settle the delinquent list of each collector, as well of state as of county taxes, and make allowance of delinquents; and upon such allowance the collectors shall be credited with the amount thereof." All these provisions are in accordance with the express limitation of the term of office of a collector to one year; and their meaning becomes plainer after an examination of the same provisions expressed at greater length, and in a different order, in the act above referred to, entitled " An act concerning the Levy Court, clerk of the peace, assessors, collectors, and county treasurers," to be found on page 373 of the Digest. At the end of his year of office he ceased to hold the office of collector of taxes of the hundred for which he had been appointed, and the collector's seal provided for in Chapter 372, Vol. 14, Laws of Delaware (Rev. Code, p, 90), was delivered to his successor in office. If he had failed to pay " to the officers authorized by law to receive the same " the amount of all taxes committed to him for collection, after deducting commissions and delinquencies, by the first Tuesday of February next after his appointment, there was a complete breach of the condition of his official bond; and the Levy Court after the final settlement in the following month of March, when the delinquent list was allowed, had full power and authority to order the official bond executed at

once; any delay after that being merely indulgence on the part of the county representatives to a debtor of the county for a sum finally fixed and ascertained.

So far there is no suggestion of any powers surviving the one-year term of office, but in Section 18 of Chapter 12 of the Revised Code we find the provision that "no collector nor his executors or administrators shall collect or receive any tax after·two years from the date of the warrant; after that date it shall. be extinguished." This prohibition implies the power of the late collector or his executor or administrators to continue to collect, within the time limited, the taxes required, according to his warrant and duplicate, to be collected, which have not been allowed as delinquent, and which he failed from any reason to collect during his term of office. And this power is recognized.in the act mentioned above, entitled "An act in relation to the liability of principal and surety," passed March 23, 1877, and being Chapter 342, Vol. 15, Laws of Delaware, which empowers the Levy Court, in certain contingencies, " to issue an order restraining such late collector from the further collection of any taxes committed to him, and to appoint the collector resident in said hundred, or any other citizen of the hundred, to collect the residue of the taxes uncollected by such late collector." Prior to the revision of the statutes in 1852, the power was exercised by the late collector, or his executors or administrators, by virtue of the express authority given by Sec. 8, Chap. 278, Vol. 6, Laws of Delaware, already recited. The Revised Statutes of 1852 re-enacted the limitation of the power contained in Section 2 of Chapter 491, Vol. 9, Laws of Delaware, above recited. but omitted from the revision the express grant of the power. But the legislative intent to continue the power is to be inferred from their limitation of it. And this construction is placed beyond a doubt by the subsequent practical construction, the power being exercised as before without question, and furthermore by the later legislative recognition of the existence of the power in Chapter 342, Vol. 15, Laws of Delaware, above recited. There can be no doubt, there-

fore, that prior to the act of April 28, 1891, above mentioned, a late collector, or his executors or administrators, might continue to exercise the powers granted by his warrant for the collection of taxes until after the expiration of two years from the date of such warrant.

It, therefore, only remains to consider whether the act entitled "An act in relation to the Levy Court of New Castle county," passed April 28, 1891, abolished, or in any manner affected, the powers of such late collectors; that is to say, the persons appointed collectors by the Levy Court of New Castle county in the month of February, 1890, and to whom were issued on or before the first Tuesday of April of that year duplicates and warrants for the collection of taxes levied for the year 1891, or their executors or administrators. The last-mentioned act provides for a change in the numbers and mode of election of Levy Court Commissioners composing the Levy Court of New Castle county (such changes to take effect in January, 1893,) and radically alters the long-established system of collecting and disbursing the county revenue, such alteration being made to apply to the collection and disbursement of the revenue for 1891, the current year. The powers and duties of the Levy Court in relation to the assessment lists of the several hundreds, and the levy of taxes thereon, are in no way affected; but a new officer, to be known as the "Receiver of Taxes and County Treasurer," is provided for, to whom the Levy Court is required to issue the duplicates of the taxes of each hundred, and the warrant for their collection, on or before the 1st day of July in every year, beginning with July, 1891; the said receiver of taxes being charged with the duty, and invested with the power, of collecting the taxes of the whole county personally or by deputy, or by collectors chosen by himself. The act further provides for a new system of auditing and controlling the expenditure of the taxes collected; the presumable intent of the legislature, to be gathered from all the provisions of the act, being to provide for the more prompt and economical collection of the taxes, and for a system of

checks upon extravagance and misappropriation, which might insure prudence and probity in their expenditure.

Inasmuch as " the receiver of taxes and county treasurer" provided for in the act was required to enter upon the duties of his office in time to collect and disburse the revenue of the year 1891, in the place of the collectors of taxes and county treasurer then in office under the antecedent law, the act proceeds to abolish the said offices; and in Section 2 thereof it is provided " that the terms and powers of office of the county treasurer and collector of taxes, who have been appointed or elected by the Levy Court of New Castle county since the first day of February, 1891, be, and the same are hereby, terminated and ended, and the said offices as now fixed by law are hereby abolished ; and from and after the passage of this act the said offices of county treasurer and collectors of taxes of New Castle county, as now fixed by law, are hereby abolished." But it is contended that the language in this section not only terminates and ends the powers and terms of office, and abolishes the offfices of the said county treasurer and collectors of taxes of New Castle county, whose places are filled and whose powers and duties are devolved upon the receiver of taxes and county treasurer provided for by the act, but, in addition, reaches back to the late collectors, and terminates and ends all the powers of collecting taxes possessed by them or by their executors and administrators under the provisions of the antecedent law. Such a construction is entirely inadmissible. In the light of the antecedent law examined above, and the whole of the statute under consideration, the meaning of this section is plain and unambiguous; that is to say, it terminates and ends the terms and powers of office of the officers named, to wit, the county treasurer and collector of taxes who had been appointed or elected by the Levy Court of New Castle county since the 1st day of February, 1891. These were the only officers whose terms and powers of office were inconsistent, or in any way conflicted, with the fiscal changes contemplated by the act, and constituting its main scope and object. Those changes were made to

begin with the collection and disbursement of the taxes calculated and laid by the Levy Court for the year 1891; and the continuance in office of the said county treasurer and collectors of taxes, charged with the collection and disbursement of the same taxes, was of course fatal to the inauguration of the proposed reforms in year 1891; and it was natural for the legislature to express its intent to remove this obstacle with such vigor, and even redundancy of expression, as to prevent the possibility of a doubt. This may, perhaps, account for the addition of the clause, "and from and after the passage of this act the said offices of county treasurer and collectors of taxes of New Castle county as now fixed by law are hereby declared to be abolished," which is evidently a mere repetition of the preceding clause, which sufficiently indicated that the changes of the fiscal system went beyond the mere change of agents. But, however this may be, it cannot be for a moment held that the language above quoted reaches back to the predecessors in office of the said collectors, so as to deprive them, or their executors or administrators, of the power of collecting "the residue of the taxes uncollected by such collector."

It is manifest from the preceding review of the antecedent law that a late collector, or his executors or administrators, possesses the power of collecting "the residue of the taxes uncollected by such collector;" not by virtue of the office of collector, for his term of office has expired by the terms of its creation, his successor in office has been appointed, and the final accounting for the purpose of fixing the amount of his indebtedness on his official bond (even if he has not paid the said indebtedness) has been had, but because the statute has granted him the privilege of continuing to exercise, until the expiration of two years from its date, the powers expressed in his warrant for the collection of the taxes which he has actually advanced to the county, or which he and his sureties have assumed; indulgence having, perhaps, been granted to embarrassed taxables on the faith of this power to reimburse himself for taxes advanced or assumed by virtue of the extension for

another year of the power of the writ or warrant in his hands·
How, then, even without reference to the scope, purpose, and sub-
ject-matter of the statute under consideration, and simply looking
to the language of Section 2, could the words, "and from and after
the passage of this act the said office of county treasurer and col-
lectors of taxes of New Castle county, as now fixed by law, are
hereby abolished," be so construed as to deprive the predecessors in
office of such collectors, the late collectors, whose terms of office
had already expired by the terms of the law creating them, of this
power of reimbursement,—of this personal right to proceed under
their warrant for the space of two years from its date? The un-
derlying principle of all construction is that which seeks the intent
of the legislature in the words employed to express it. When
doubts arise on the meaning of words, the antecedent law, the evil
to be remedied, and the circumstances under which the law has
been enacted may be resorted to for any light they may possibly
throw upon the meaning. There is also a general rule of law
which requires the courts to always construe statutes as prospective,
not retrospective, unless constrained to the contrary by the rigor of
the phraseology. We have considered fully the antecedent law.
The evil to be remedied is manifestly supposed defects and abuses
inherent in the former system of collecting and disbursing the taxes
of New Castle county, and the remedy provided by the statute is a
new system of collecting and disbursing those taxes, beginning with
the taxes levied for the year 1891. Did any doubts arise as to the
meaning of this section, would the rules of construction permit the
inference that the legislative intent in such a statute was to remit
all uncollected taxes levied prior to 1891, by depriving late collec-
tors, or their executors or administrators, of the power existing
under antecedent law to collect them, and providing no other means
for their collection? But were it possible, by any ingenuity of
construction, to sustain the contention that the late collectors, the
predecessors in office of the collectors appointed or elected by the
Levy Court of New Castle county since the first day of February,

1891, were, at the time of the passage of the act entitled "An act in relation to the Levy Court of New Castle county," officers whose terms and powers of office were therein terminated and ended, and were thus deprived of the right of collecting any taxes, Section 24 of the act itself forbids such a construction. It provides "that nothing in this act shall be construed so as to vacate, annul, or invalidate any official bond heretofore given by any officer whose term of office is herein vacated and ended, either as to the principal or any surety therein.   *   *   * "   A construction which would deprive the late collectors of a right of such importance, existing at the time their official bonds were given, must of necessity be a construction forbidden expressly by the act itself, as well as one imputing incredible folly and injustice to the legislature of the State.