JOSEPH STOECKLE, BERNARD BONNER, HUGH LYNCH, JOHN MCCAFFERTY, AND THOMAS TOY,

vs.

ROBERT LEWIS ARMSTRONG, JOHN J. GALLAGHER, JOHN MEALEY, HENRY M. WHITE AND WILLIAM A. SCOTT, COMMISSIONERS COMPOSING THE LEVY COURT OF NEW CASTLE COUNTY, AND PIERCE GOULD, SHERIFF OF NEW CASTLE COUNTY.

*New Castle, Sept. T.* 1897.

Where, under the Act of March 23, 1877, sureties for a collector of taxes petitioned the Levy Court to restrain the collector from the further collection of taxes upon the ground that they believed that they were liable to suffer loss by reason of their suretyship, and the Levy Court failed and neglected to comply with such petition, *held*, that the sureties were not thereby discharged from their liability.

The Act of March 23, 1877, respecting the rights of sureties for a collector of taxes, is not solely for the benefit of the sureties, but is also intended to afford security and protection to the State.
Laches is not imputable to the state, and the *laches* of public officers does not affect the obligation of sureties of other public officers affected thereby.

In the case of private undertakings, the creditor is held to be responsible for the acts of his agents,—their acts are his acts,—whereas, in the case of official bonds, entered into for the Federal or State governments, the government is not held responsible for the acts of its agents, when not authorized by law; and, where loss or increase of risk comes to the sureties in an official bond, by reason of the conduct of public officers, the chance of their mistakes or misconduct, their *laches* or wrongful acts, must, in the absence of express statutory provision, be taken to be part of the risk which the sureties in an official bond assume.

Sureties in official bonds of public officers are not discharged because loss to them occurs through the acts or omissions, the fraud or wrongdoing, of other public officers, unless the wrongful act or

omission inheres in and is made part of the condition of the obligation upon which the sureties are sought to be held.

In the construction of statutes, provisions which are in terms discretionary are to be construed as mandatory, only in cases when the public interest and rights are concerned, and where the public or third persons have a claim *de jure* that the power should be exercised.

BILL FOR AN INJUNCTION BY SURETIES OF A COLLECTOR OF COUNTY TAXES.   This was a bill filed in November, 1893, by the complainants, as sureties of John J. Dougherty, who was appointed on February 26th, 1890, Collector of County Taxes for the Northern District of Wilmington Hundred, in New Castle County. Judgment was entered on the said bond on July 8th, 1890.   An effort was made by the complainants during the following year to induce the defendants, who constituted the Levy Court of the County, to take action, under the Act of March 23, 1877, for the protection of the sureties against loss, of their apprehension of which they notified the Levy Court.   Somewhat prolonged negotiations resulted in the refusal or failure of the Levy Court to take action, and as a result the sureties claimed that they were in equity discharged from liability.   The details of the negotiations between the complainants and the Levy Court, and the facts alleged and admitted or proved, so far as they were deemed material, are fully stated in the opinion of the Chancellor.

*Benjamin Nields, George Gray and Harry Emmons,* for complainants.

It is the right of the surety to compel the creditor to utilize his remedies against the debtor. *Murfree, Off. Bonds, sec.* 667; *Bisph. Eq. sec.* 339; *Sto. Eq. Jur. secs.* 325–7, 730, 849; *Hayes vs. Ward,* 4 *Johns. Ch.* 123; *Colgrove vs. Tallman,* 67 *N. Y.* 95.

The obligation of the creditor to the surety to avail himself of any fund of the debtor available to the creditor, or in default of so doing to discharge the surety from liability, is fully recognized by the course of decisions in equity in the State. *McDowell vs. Bank of W. & B.,* 1 *Harring.* 369; *Hard-*

*castle vs. Commercial Bank*, 1 *Harring.* 374, *note; Houston et al. vs. Hurley's Adm'r.*, 2 *Del. Ch.* 247; *Dodd, Adm'r. vs. Wilson*, 4 *Del. Ch.* 108; *Wilds vs. Attix*, 4 *Del. Ch.* 253; *Wharton et al. vs. Clements, et al.*, 3 *Del. Ch.* 209; *Miller vs. Stout*, 5 *Del. Ch.* 259; *Hazel vs. Sinex*, 6 *Del. Ch.* 19, 6 *Atl.* 625.

Under the statutes of 1877, after the breach of the condition of the collector's bond, whereby the liability of the sureties was fixed, the then uncollected taxes constituted a fund which the Levy Court, upon the application of the sureties in a proper case, were authorized and empowered to make available for the benefit of the sureties.

The taxes when placed in the control of the Levy Court, became a fund to be applied to the reduction of the debt, and the statute provided the machinery to effect that end.

Existing laws are incorporated into the contract, as if expressly referred to. *Edwards vs. Kearsey*, 96 *U. S.* 595; *Bronson vs. Kinzie*, 1 *How.* 311; *Brine vs. Insurance Co.* 96 *U. S.* 627; *Barnitz vs. Beverly*, 163 *U. S.* 118; *Hudson vs. Bishop*, 32 *Fed. Rep.* 519; *Walker vs. Whitehead*, 16 *Wall.* 314.

The Act of March 23, 1877, provides a remedy for sureties on a collector's bond to obtain their equitable rights, and it is therefore a remedial statute and must be liberally construed. 1 *Cooley, Blacks.* 86; *Suth. Stat. Constr. sec.* 409; *Endlich, Interp. Stat. sec.* 107; *Black, Interp. Laws, sec.* 117; 23 *A. & E. Encyc. L.* 414.

It is not a statute for the security or protection of the state, as is shown by the fact that the Levy Court can only proceed under it, at the instance of the surety.

If the sureties, by their petition and statement, showed that there was danger of loss, and if, in fact, there was danger of loss, the sureties thereby brought themselves within the provisions of the statute, and it became the imperative duty of the Levy Court to grant relief secured to them by the statute. *Supervisors vs. U. S.*, 4 *Wall.* 435; *City of Galena vs. Amy*, 5 *Wall.* 705; *Black, Interp. L.* 341; *Suth. Stat. Constr. sec.* 461–2; *People vs. Supervisors of Ostego County*, 51 *N. Y.* 401.

*Bradford* and *Vandegrift*, for respondents.

After the date at which the collector was legally required to make final settlement, upon his failure to do so he was in default and there was a breach of the condition of the bond. At any time thereafter the County had the right to issue execution for the amount found to be due on the adjustment and settlement, which was final and fixed the liability of the collector and his sureties. Any delay in proceeding on the judgment was simply an indulgence. *Smith vs. Ridings*, 9 *Houst.* 234.

As a relief against this liability the sureties seek to interpose the provisions of the Act of March 23, 1877. 15 *Del. Laws*, 123, *ch.* 342.

This Act, so far as it authorizes action by the Levy Court is discretionary, not mandatory. Such words are construed as mandatory only for the purpose of sustaining and enforcing rights, but not for the purpose of creating or determining the character of a right. To be mandatory the right must be independent of the statute. *Suth. Stat. Constr. sec.* 462; *Julius vs. Lord Bishop of Oxford, L. R.* 5 *App. Cas.* 214; *Ex parte Banks*, 28 *Ala.* 28; *State vs. Trustees of Holt County*, 39 *Mo.* 521; *Black, Interp. L.* 338; *In re Newport Bridge*, 2 *El. & El.* 376, 377; *Cooper vs. Mayor &c. of San Jose*, 55 *Cal.* 599; *Proctor vs. Green*, 59 *N. H.* 350; *Newburgh Turnpike Co. vs. Mlller*, 5 *Johns. Ch.* 113; *Carr et al. vs. Northern Liberties*, 35 *Pa. St.* 324; *Kellogg vs. Page*, 44 *Vern.* 356; *Seiple vs. Borough of Elizabeth*, 27 *N. J. L.* 407; *Sifford vs. Beatty*, 12 *O. St.* 189; *Bansamer vs. Mace*, 18 *Ind.* 27; *Medbury vs. Swan*, 46 *N. Y.* 200; *Supervisors of Rock Island vs. United States*, 4 *Wall*, 435; *Galena vs. Amy*, 5 *Wall.* 705; *Schuyler County vs. Mercer County*, 9 *Ill.* 20; *Malcom vs. Rodgers*, 5 *Cow.* 188.

The rights claimed by complainants can avail them only if they have paid the debt and secured a right of subrogation, but this they have not done. *Hardcastle vs. Commercial Bank*, 1 *Harring.* 377; *Rossiter vs. Waterman*, 151 *Ill.* 169, 177; *Aetna Life Ins. Co. vs. Middleport*, 124 *U. S.* 534; *Del. Laws, Rev. Code* (1893) 533.

Even if the powers conferred by the Act are not discretionary the sureties are not entitled to be relieved by reason of the wrongful act, laches or negligence of the Levy Court, since in no case are these to be imputed to the state. *United States vs. Kirkpatrick*, 9 *Wheat.* 720; *United States vs. Vanzandt*, 11 *id.* 184, *United States vs. Nicholl*, 12 *id.* 505; *Dox vs. Postmaster*, 1 *Pet.* 318; *Ryan vs. United States*, 19 *Wall.* 514; *Minturn vs. United States*, 106 *U. S.* 437; *Hart vs. United States*, 95 *U. S.* 316; *Looney vs. Hughes*, 26 *N. Y.* 514; *People vs. Russel*, 4 *Wend.* 570; *Jones et al. vs. United States*, 18 *Wall.* 662; *Ponta vs. Mercer County,* 7 *Bush* (*Ky.*) 576; *Waseca County vs. Sheehan*, 42 *Minn.* 57; *Detroit vs. Weber*, 26 *Mich.* 284; *United States vs. Boyd*, 15 *Pet.* 187; *Stern vs. People*, 102, *Ill.* 540; *Manly vs. City of Atchison*, 9 *Kan.* 358; *Duncan vs. State*, 7 *La. Ann.* 377; *Bower vs. Commissioners of Washington County*, 26 *Pa. St.* 69; *Supervisors of Richmond County vs. Wandel*, 6 *Lans.* 33; *State vs. Alden*, 12 *Ohio* 59.

In the case of private individuals, in order that a permissive statute shall be construed as mandatory, there must concur two elements; first, a right or claim *de jure* on the part of the individuals, and, second, the power in a public officer or board of officers to enforce or protect that right. This rule is recognized in the principal authorities cited for the complainants, and other cases to the same effect, are, *Ralston, et al. vs. Crittenden*, 3 *McCreary* 332; *Schuyler County vs. Mercer County*, 9 *Ill.* 20; *Malcom vs. Rogers*, 5 *Cow.* 188; *Lowe vs. Dunham*, 61 *Me.* 566; *City of Cairo vs. Campbell*, 116 *Ill.* 305; *Mayor &c. vs. Furze*, 3 *Hill* 612; *Blake vs. Portsmouth &c. R. R. Co.*, 39 *N. H.* 435.

Upon a critical examination of the Delaware cases cited for complainant, it will be found that not a single rule or principle has been or can be extracted from any of them, or from any other approved authority, to the effect that, aside from the Act of March 23, 1877, Dougherty's sureties had a right, at law or in equity, to terminate his collectorship or restrain him from their further collection of taxes, and shift from their own shoulders, *sub modo*, their fixed liability to the County upon his official bond.

THE CHANCELLOR:—

This is a suit to enjoin the defendants from taking any action or proceedings upon a judgment, entered on the eighth day of July A. D., 1890, pursuant to a warrant of attorney, upon a bond given on the fifth day of May, 1890, to the State of Delaware, in the penalty of one hundred thousand dollars, with the complainants and William McMenamin and John A. Boers as sureties, by John J. Dougherty, who on the twenty-sixth day of February, 1890, had been appointed collector of county taxes for the Northern Collection District of Wilmington Hundred in New Castle County—the said taxes having been laid for the year 1890, and the term of office being for one year, running from the date of giving the said bond, the appointment not being deemed complete until a bond was given, as required by the statute.

On the nineteenth day of October 1893 a writ of execution for the sum of $16,353.43 was issued by order of the Levy Court upon the judgment entered upon the said bond; and under and by virtue of said writ the Sheriff of New Castle County, one of the defendants in this suit, levied upon and took in execution all of the goods and chattels of each of said complainants respectively.

A bill was filed by the complainants on the fourth day of November following, and a restraining order granted, and a rule issued to show cause why a preliminary injunction should not be awarded, returnable on the ninth day of the same month.

On the tenth day of the same month this amended bill was filed, and after hearing argument of counsel for the respective parties, the Honorable James L. Wolcott, who was then Chancellor, ordered that the rule be made absolute, and that a preliminary injunction issue, restraining the said defendants, composing the Levy Court, from taking any proceedings upon the said Judgment, and the said defendant Pierce Gould, Sheriff, from removing, disturbing, advertising or selling the goods and chattels or property of said complainants or any of them until the further order of the Chancellor.

Subsequently, proofs were taken in the cause and it was finally brought to a hearing before me, I having succeeded Chancellor Wolçoet on the twenty-fifth of November, 1895, the last supplementary brief having been submitted by counsel in November, 1896.

Thereafter, by the provisions of the amended Constitution of the State of Delaware, which took effect on the tenth day of June in the year 1897, the Courts of Justice then existing were abolished and the office of Chancellor expired. *Schedule Constitution of* 1897, *sec.* 9.

It was further provided, however, in the same Section as follows: "All suits, proceedings and matters which on the said tenth day of June in the year 1897 shall be depending in the Court of Chancery or in the Orphans' Court, and all records, books and papers of said Courts, respectively, shall be transferred to the Court of Chancery or Orphans' Court respectively, established by the amended Constitution; and the suits, proceedings and matters shall be proceeded in to final decree, order or other determination."

On the said tenth day of June, I was duly commissioned and qualified, Chancellor of the State of Delaware, in accordance with the provisions of the amended Constitution, and a re-argument of the case having been waived by counsel for the respective parties, I shall now proceed to render a decision.

The question in this case is, whether the liability of the sureties on the official bond of John J. Dougherty, Tax Collector as aforesaid, was destroyed by the action taken by the Levy Court of New Castle County, upon a certain petition, presented to the said Levy Court by the sureties, in accordance with the provisions of Chapter 342, Vol. 15, Delaware Laws, passed March 23, 1877.

The case is one of great importance and interest, and has been argued by distinguished counsel on both sides, the arguments covering a very wide field and embracing a large number of distinct propositions, each of which was elaborately discussed.

Before entering upon the consideration of the contested points, it will be well to state briefly, so far as seems to be necessary for a full comprehension of the case, what is undisputed in the facts and the law.

According to the terms of the warrant issued to John J. Dougherty as Collector, etc., under the then existing law, he was required to collect and pay over to the officers authorized by law to receive the same, the amount of all the taxes committed to him for collection, excepting only, so far as allowances should be made to him by the Levy Court for commissions or otherwise, on or before the first Tuesday of February, 1891, being directed to pay one-third part thereof on the first day of July and the other third part thereof by the first day of October next preceding, but the Levy Court might in their discretion order payment of all or any of said taxes at an earlier day than those appointed; and upon the delivery to him of his duplicate and warrant, which was done in June, 1890, although bearing date the first Tuesday in April, 1890, he and his sureties became responsible for the whole amount of the taxes he was required to collect, subject only to the allowances to be made by the Levy Court.

His final settlement with the Levy Court was required to be made on the first Tuesday of March, 1891, and the Levy Court was required to make their allowance for delinquencies at such March session. His right, however, to exercise the powers granted by his warrant for the collection of taxes did not expire with his term of office as collector, but he might continue to exercise those powers until after the expiration of two years from the date of such warrant, and in the event of his death his powers devolved upon his executors or administrators. *Rev. Code*, 1893, *chap.* 8, *secs.* 18, 21; *chap.* 12, *secs.* 4, 5, 7, 8, 10; *Smith vs. Riding*, 9 *Houst.* 259, 22 *Atl.* 97.

The condition of Dougherty's bond was as follows: "That if the above bound John J. Dougherty, being Collector of County Taxes for the Northern Collection District of Wilmington Hundred in New Castle County, shall faithfully and diligently collect all the rates and taxes which he shall, accord-

ing to the duplicate and warrant to be issued to him as such collector, be required tồ collect, and all taxes whatever which shall be committed to him for collection, and shall pay the amount of all such rates and taxes, excepting only so far as allowances shall be made to him by the Levy Court for delinquencies, commissions or otherwise, to the officers authorized by law to receive the same, in the manner and within the times prescribed by law, or legally appointed by theLevy Court of said County for that purpose; and furthermore, if the said John J. Dougherty shall perform the duties of his office of Collector as aforesaid, in all things, with fidelity, then the above obligation shall be void."

In March, 1891, he made his final settlement with the Levy Court, and it was found by the Court from that settlement that the balance due and unpaid by him, after making the allowances required by law, amounted to the sum of $14,431.51.

After this settlement with Dougherty by the Levy Court in March, 1891, the breach of the condition of the bond was complete, and the amount to be collected from him and his sureties fixed. As stated by the Court of Errors and Appeals in *Smith vs. Riding*, 9 *Houston* 263, 22 *Atl.* 99, in reference to a Collector of County Taxes: "If he had failed to pay to the officers authorized by law to receive the same, the amount of all taxes committed to him for collection, after deducting commissions and delinquencies, by the first Tuesday of February next after his appointment, there was a complete breach of the condition of his official bond; and the Levy Court after the final settlement in the following month of March, when the delinquent list was allowed, had full power and authority to order the official bond executed at once."

This was not done, however, and it appears as was above stated, that an execution did not issue until October, 1893. In the meantime, on the twentieth day of May, 1891, which was after Dougherty's official term of one year had expired, the complainants presented to the Levy Court the following petition:

"To the Honorable, the Levy Court of New Castle County:

"The Petition of Joseph Stoeckle, Bernard Bonner, Hugh Lynch, Thomas Toy, and John S. Rossell, Trust Officer of the Security Trust and Safe Deposit Company, Administrator, *c. t. a.*, of John A. Boers, deceased, respectfully shows that John J. Dougherty was duly appointed by the Levy Court of New Castle County, Collector of Taxes for the City of Wilmington for the years 1889 and 1890; and your petitioners with William McMenamin, John H. McClafferty, and John A. Boers, were accepted by the said Levy Court as sureties upon the official bond of said John J. Dougherty; that there is still due from the said Collector about $14,000 and an amount of taxes still uncollected, though not believed to be sufficient to meet and liquidate the above indebtedness.

"Your petitioners further show that they have good grounds to believe, and do believe, that they have sustained, and will sustain, loss by reason of their suretyship for said Collector of Taxes, and as the term for which the said Collector was appointed has expired, your petitioners pray that he way be restrained from further collection of taxes committed to him for collection, in accordance with the provisions of Chapter 342, Volume 15, Delaware Laws.

(Signed) JOSEPH STOECKLE,
BERNARD BONNER,
HUGH LYNCH,
THOMAS TOY,
JOHN S. ROSSELL, T. O.

"Sworn and subscribed before James Monaghan, Notary Public, May 20, 1891."

On the 22nd of May, two days later, a statement was submitted to the Levy Court in support of the petition, by the attorney of the sureties, containing figures and calculations based upon an examination of Dougherty's accounts made April 22nd and 23rd by expert accountants selected by the sureties, and an allegation that since the examination of the books it had transpired that certain items then supposed to be unpaid had in fact been paid, and that the sureties were apprehensive that other similar errors might yet be discovered. It was further urged in this paper that a more thorough examination be made of the duplicate of the late collector and a proper person be appointed to close up his accounts, and that their petition be granted without delay.

On the same day, the Levy Court refused the prayer of the sureties and finally disposed of their petition by adopting a motion for its indefinite postponement.

No further payments were ever made by Dougherty, and a subsequent examination of his accounts by the Levy Court revealed frauds or mistakes in the March settlement which increased their final estimate of his indebtedness to the sum of $16,353.43 for which an execution was subsequently issued.

The statute referred to in the petition, passed March 23, 1877, provided

"That whenever the sureties in the official bond of any collector of taxes, appointed by the Levy Court, in either of the counties of this State, shall have reason to apprehend loss by reason of their suretyship for such collector of taxes, it shall be lawful for any two or more of such sureties to present a petition to the Levy Court by which such collector was appointed, stating in substance that they are sureties in the official bond of such collector of taxes, and that they have good grounds to believe, and do believe, that they have sustained, or will sustain, loss by reason of their suretyship for such collector of taxes, and praying for his removal from office or in case his official term shall have expired, and he shall not have collected and accounted to the Levy Court for all the taxes committed to him for collection, praying that he may be restrained from the further collection of any taxes committed to him for collection."

It then prescribes the manner of verifying and presenting the petition, and provides that

"Upon the presentation of any such petition, it shall be the duty of the Levy Court, as soon as conveniently can be thereafter to inquire into the matter, and if the said Levy Court shall be of opinion that there is danger of loss to such sureties by reason of their said suretyship, the said Levy Court shall have the power, at once, to remove from office such collector of taxes, and to appoint some citizen of the Hundred collector in his place for the residue of his term, and may compel the delivery of the official seal, and of the duplicate and warrant to his successor in office, after he shall have given bond, as other collectors."

A subsequent clause applying especially to the case under consideration, provides that

"In case the prayer of any such petition presented to the Levy Court shall be to restrain a collector of taxes whose term shall have expired, and who shall not then have collected all the taxes committed to him for collection, from the further collection of any taxes committed to him for collection, and if the said Levy Court after inquiring into the matter, shall be of opinion that there is danger of loss to such sureties by reason of their said suretyship, the said Levy Court shall have power to issue an order restraining such late collector from the further collection of any taxes committed to him, and may appoint the collector resident in said Hundred, or any other citizen of the Hundred, to collect the residue of the taxes uncollected by such late collector and may compel the delivery of the duplicate and warrant to the person· appointed to collect the residue of taxes uncollected by such late collector, after he shall have given bond as other collectors.

The other provisions of the statute relate in detail to the method of carrying into effect any order that might be made by the Levy Court in the premises, without jeopardizing the interests of the public, and contains *inter alia* the following:

"Or in case of the appointment of a person to collect the residue of the taxes uncollected by a collector whose term of office shall have expired as herein provided, he and his sureties shall be chargeable with all taxes uncollected by his predecessor, subject to allowances by the Levy Court, as in the cases of other Collectors. Such appointment shall not discharge the sureties of the first collector from any part of their responsibility, or otherwise affect it, but all sums collected by the last collector shall be credited to the first. He shall have the same powers and be subject to the same duties and liabilities as the collector first appointed. On his death they shall devolve upon his executor or administrator."

The complainants allege in their bill:
"That upon the presentation to said Levy Court of said petition and statement, said Levy Court did not then nor at any time thereafter, inquire into the matter, as it was the duty

of the said Levy Court under the said act in that behalf so to do, but wholly neglected and refused to make such inquiry."

·   "That the Levy Court called upon their aitorney and legal adviser for his opinion as to what action should be taken by the said Court, and that he had advised them in substance that an act passed by the Legislature on the twenty-eighth of April, 1891, known as the "Five Commissioners Bill," was inconsistent with and had repealed the act under the provisions of which the petition of the sureties had been presented, by abolishing the office of tax collector, and that he therefore advised the Levy Court not to take any action in the premises upon said petition and statement. .

That upon hearing this opinion and advice, which was given on the twenty-second day of May, 1891, the Levy Court immediately postponed indefinitely the petition of the sureties, being controlled by the opinion of their attorney that they had no right to make any inquiry at all; and that his opinion, upon which they acted, precluded the making of any inquiry in compliance with the law which he considered to be repealed.   Subsequently, however, the decision of the Court. of Errors and Appeals in the case of *Smith v. Riding*, 9 *Houst.* 235, 22 *Atl.* 97, decided June 18th, 1891, settled beyond a doubt, that the so-called "Five Commissioners Bill" did not affect the power of the Levy Court to act in the premises, under the provisions of the statute above cited.

Complainants urge that this action of the Levy Court was an impairment of the obligation of the contract existing between the complainants, as sureties as aforesaid and the State of Delaware, whereby the sureties were relieved from their liability under Dougherty's bond.

The defendants deny that the opinion of their attorney had the effect upon the action of the Levy Court claimed by the complainants, and allege that the Levy Court did inquire into the matter presented by the petition and statement, in accordance with its duty, under the provision of the act of Assembly in that behalf.

Opinion—counter allegations of the parties.

The minutes of the Levy Court are in evidence upon this point, and also the testimony of the individual members composing the Levy Court, who were examined at great length with a view to ascertain what kind of consideration was given to the petition, what kind of inquiry, if any, was made by them into the matter presented by the petition, and what motive influenced and controlled their action in indefinitely postponing said petition.

The complainants further allege, "That it was made to appear to said Levy Court by said petition and statement, that there was danger of loss to the complainants as sureties as aforesaid, by reason of their said suretyship."

And they contend, that although the language of the statute simply confers a power upon the Levy Court, and in its terms leaves its exercise to their judgment and discretion, yet the permissive words are in effect mandatory; that the power thus given is in the nature of a trust for the benefit of the sureties and it was the plain duty of the Levy Court to give them the relief prayed for.

They therefore claim, that, even granting the contention of the defendants, the Levy Court did inquire into the matter, they nevertheless violated the duty imposed upon them by the statute, and impaired the obligation of the contract of suretyship, in that they refused to grant the petition of the sureties upon information in relation to Dougherty's conduct in the office of Collector and the character of his accounts, which, they claim, brought home to the Levy Court, at the time the petition was presented to them, the knowledge that Dougherty was fraudulently in default.

The defendants on the other hand, maintain that, under the provisions of the statute, it was discretionary with the Levy Court to grant or refuse the prayer of Dougherty's sureties, even if the Court had been of the opinion that there was danger of loss to the sureties, which they deny; that many considerations affecting the public interests might enter into their deliberations and affect their decision quite independently of the interests of the sureties.

The contention of counsel here, is upon the application to the questions raised by the case under consideration, of a rule of construction about which there seems to be practically no dispute. In the case of the *Newburgh Turnpike Co. vs. Miller,* 5 *Johns. Ch.* 101, which is cited with approval in substantially all the American cases upon the point, it is expressed by Chancellor Kent as follows: "In respect to statutes, the rule of construction seems to be, that the word *may* means *must* or *shall*, only in cases where the public interest and rights are concerned, and where the public or third persons have a claim, *de jure*, that the power should be exercised."

Many cases were cited upon this point, and in particular *Julius v. Lord Bishop of Oxford, L. R.* 5 *App. Cas.* 214, in which there is not only a masterly analysis of all the English cases going to establish the rule, but an extremely felicitous and clear statement of it.

But the contentions upon this point as well as the other questions which I have stated at length can only be properly considered in relation to, and in subordination to a principle of law which the counsel for the defendants claim to be applicable to, and decisive of the question at issue.

This principle is based upon the distinction which exists between the liability of sureties in the official bonds of public officers, and their liability in similar bonds given in private undertakings.

It is claimed by the defendants that, assuming that the contention of the complainants is correct, the Levy Court did not inquire into the matter presented by the petition of the sureties as required by the act of March 23, 1877; and assuming further that this act was mandatory upon the Levy Court, and that the Levy Court improperly declined to grant the prayer of the sureties, yet nevertheless, such breach of duty could not operate to discharge the sureties from their liability, because of the well-established principle of law that sureties in official bonds of public officers are not discharged because loss to them occurs through the acts or omissions, the fraud or wrong doing of other public officers, unless the wrongful act or omission inheres in and is made part of the condition of the

obligation upon which the sureties are sought to be held. And this they contend is not the intention or effect of the act of March 23rd, 1877, upon the provisions of which the complainants base their claim for relief.

The complainants on the other hand contend that the provisions of the act of March 23, 1877, did enter into and form a part of their contract of suretyship.

The cases in which the Supreme Court of the United States has passed upon the liability of sureties in the official bonds of public officers, where loss has occurred in consequence of the acts or omissions of other public officers are comparatively few in number, although they cover a period of over fifty years. One follows the other in a very interesting and instructive manner and they are all cited as authorities, to be implicitly followed, in the cases cited by counsel, from the state courts. I will therefore consider them at length, and then endeavor to ascertain wherein, if at all, the case under consideration can be differentiated from cases whose authority and correctness is absolutely unquestioned.

The first case is that of the *United States v. Kirkpatrick*, 9 *Wheaton*, 720, decided in 1824, in which the opinion was delivered by Mr. Justice Story.

The next case is that of the *United States v. Vanzandt*, 11 *Wheaton*, 184, decided in 1826; opinion by Mr. Justice Washington.

In the third case, *Dox v. Postmaster General*, 1 *Pet.* 317, decided in 1823, the opinion of the Court was delivered by Chief Justice Marshall, and so fully reviews the two preceding cases that a quotation from his opinion seems the best mode of presenting those cases. Dox was a deputy postmaster and the suit was instituted in the Court below against him and his sureties on a bond given for the faithful performance of his duty. Dox was removed from his office on the first day of July, 1816, but the Postmaster-General did not open an account against him and make any claim and demand on him for the moneys received by him, as postmaster, until the first day of July, 1821. At the time of his removal from office, he was solvent and able to pay his debts, and continued so until

the first day of July, 1819, after which he became insolvent, and continued to be so. And the Postmaster-General well knowing that Dox had neglected and refused to pay over the moneys due from him as postmaster at the end of every quarter, etc., did not commence his suit until August, 1821.

C. J. Marshall in his opinion says: "These facts, placed on the record without explanation, must be admitted to show a gross neglect of duty on the part of the Postmaster-General. Does this neglect discharge the sureties from their obligations?

"The condition of the bond is broken, and the obligation has become absolute.

"Is the claim of the United States upon them, released by the *laches* of the officer, to whom the assertion of that claim was intrusted?

"This question, also, has been settled in this Court.

"The case of the *United States vs. Kirkpatrick & others*, 9 *Wheat.* 720, was a suit instituted on a bond given by a collector of Direct taxes and Internal duties, under the act of 22d July, 1813, ch. 16. The Act required each collector to transmit his accounts to the Treasury monthly; to pay over the moneys collected quarterly; and to complete his collection, pay over the moneys collected to the Treasury, and render his final account within six months from the day on which he shall have received the collection list from the principal assessor. In case of failure, the Act authorizes and requires the comptroller of the Treasury, immediately to issue his warrant of distress against such delinquent collector, and his sureties. The comptroller did not issue his warrant of distress according to the mandate of the law; and this suit was instituted four years after such warrant ought to have been issued.

"The Court left it to the jury to decide whether the government had not, by this omission, waived its resort to the sureties. A verdict was found for the defendants; the judgment on which was brought before this Court by writ of error.

"The counsel for the defendant urged that *laches* might be imputed to the government, through the negligence of its officers; but this Court reversed the judgment, declaring the

opinion that the charge of the Court below, which supposes that *laches* will discharge the bond, cannot be maintained in law. 'The utmost vigilance', it was said, 'would not save the public from the most serious losses if the doctrine of *laches* can be applied to its transactions. It would in effect, work a repeal of all securities'. It was further said, that the provisions of the law which require that settlements should be made at short and stated periods, are created by the government for its own security and protection; and to regulate the conduct of its own officers. They are merely directory to such officers, and constitute no part of the contract with the security. After a full discussion of the question, the Court laid down the principle, 'that the mere laches of the public officers, constitutes no grounds of discharge in the present case.' The same question came on to be again considered in the case of the *United States vs. Vanzandt*, 11 *Wheat.* 184.

"This was an action of debt brought up on a paymaster's official bond, against one of the sureties. The act of organizing the general staff, and making further provision for the army of the United States, 'makes it the duty of the paymaster to render his vouchers to the Paymaster General, for the settlement of his accounts;' and if he fail to do so, for more than six months after he shall have received funds, the act imperatively enjoins 'that he shall be recalled, and another appointed in his place.' The paymaster had failed to comply with the requisites of the law; after which the Paymaster General instead of obeying its mandate, by removing him, placed further funds in his hands. The Circuit Court instructed the jury, that the defendant, the surety, was not chargeable for any failure of the paymaster to account for such additional funds, so placed in his hands after his said default and neglect in respect of the funds previously received were known; and a verdict was found for the defendant. The judgment on this verdict was also brought before the Court by a writ of error, and was reversed.

"The counsel for the defendant contended, that this case differed from the *United States vs. Kirkpatrick* and others; but the Court said 'The provisions in both laws are merely direc-

tory to the officers, and intended for the security and protection of government, by ensuring punctuality and responsibility; but they form no part of the contract with the surety'. The placing further funds in the hands of the defaulting paymaster, was considered as the necessary consequence of his continuance in office. This is certainly a very strong case. These two cases seem to fix the principle, that the *laches* of the officers of the government, however gross, do not of themselves discharge the sureties in an official bond, from the obligation it creates, as firmly as the decisions of this Court can fix it. We think they decide the question now under consideration."

In *United States vs. Boyd and others*, 15 *Pet*. 187, 208, decided in 1841 (Mr. Justice Catron delivering the opinion), the suit was instituted against Gordon D. Boyd, Receiver of Public Moneys in the district of lands subject to sale at Columbus, Miss., and the sureties in his official bond.

Other questions were involved in the case, but Mr. Justice Catron speaking of the failure of the Receiver to account and pay as required by the rules of the Treasury Department, says: "*Laches* are not imputable to the government. The regulations requiring settlement to be made by its officers at short periods are· designed for the protection of the government, and merely directory to the officers, such is the settled doctrine of this Court", and cites the cases above quoted.

Finally, in *Jones et al. vs. United States*, 18 *Wall*. 662, decided in 1873, suit was instituted in the Court below against *Jones et al.* as sureties for one Quillian, conditioned that the said Quillian should faithfully discharge the duties of postmaster at Milledgeville, Ga., and, "faithfully, once in three months, or oftener, if thereto required, render account of his receipts and expenditures, and pay the balance of all moneys that shall come into his hands, and keep safely all the public moneys collected by him."

The case was argued on demurrer to the defendants' plea which briefly and concisely presents the question at issue as follows:

"That as to any default of the said Quillian, their principal in said bond, in the declaration mentioned as postmaster aforesaid, within two years before the commencement of this action, they are not liable in law therefor, but have been and are fully discharged and released, by the acts and conduct of the plaintiff, through their agent, the Auditor of the Treasury of the Post Office Department, of the said plaintiff, who had full notice of the defalcation and embezzlement of funds of the plaintiff before them; and yet neglectfully permitted said Quillian to remain in office as such postmaster, whereby he was enabled to commit all the default and embezzlement aforesaid, within two years before the commencement of this action."

Justice Clifford, who delivered the opinion of the Court, simply said "that it was quite evident, that the facts pleaded did not constitute any defence to the action, and that such being the settled law of the Court it was not necessary to enter into any discussion of the question."

I will cite another case arising upon an official bond, which is particularly valuable as an illustration of the principle established by the preceding cases, although the bond is not the bond of a public officer. It is *Hart vs. United States*, 95 *U. S.* 318. This was a suit commenced in the Court below against the sureties in a distiller's bond, the breach being the non-payment of internal revenue tax by their principal, the distiller, on spirits distilled by him. It was argued on demurrer.

Mr. Chief Justice Waite delivered the opinion of the Court, and said: "Under the law as it stood when this suit was commenced, no distilled spirits could be removed from a distillery warehouse before payment of the tax, 15 Stat. L. ch. 130. 15, without subjecting all of those engaged in such removal to heavy penalties, *id.* 140, sect. 36. An officer of the United States had no authority to dispense with this requirement of the law. If in violation of his duty he permitted such removal, he subjected himself to punishment, but did not bind the government by his acts.

"The government is not responsible for the *laches* or the wrongful acts of its officers. *Gibbons vs. United States*, 8 *Wall.* 269; *United States v. Kirkpatrick*, 9 *Wheat.* 720; *United States v. Vanzandt*, 11 *id.* 184; *United States v. Nicholl*, 12 *id.* 505; *Jones et al. v. United States*, 18 *Wall.* 662.

"Every surety upon an official bond to the government is presumed to enter into his contract with a full knowledge of this principle of law, and to consent to be dealt with accordingly. The government enters into no contract with him that its officers shall perform their duties. A government may be a loser by the negligence of its officers, but it never becomes bound to others for the consequences of such neglect, unless it be by express agreement to that effect. Here the surety was aware of the lien which the law gave as security for the payment of the tax. He also knew that, in order to retain this lien, the government must rely upon the diligence and honesty of its agents. If they performed their duty and preserved the security, it enured to his benefit as well as that of the government; but if by neglect or misconduct they lost it, the government did not come under obligations to make good the loss to him, or, what is the same thing, release him *pro tanto* from the obligation of his bond. As between himself and the government, he took the risk of the effect of official negligence upon the security which the law provided for his protection against loss by reason of the liability he assumed."

This case is followed by *Minturn v. United States*, 106 *U. S.* 437, 444, decided in 1882, in which a government officer permitted goods to be taken from a bonded warehouse without full payment of the duties thereon.

Mr. Justice Blatchford delivered the opinion of the Court, and, after citing the opinion of Chief Justice Waite in *Hart vs. United States*, and the cases cited by him, concludes as follows: "It is well settled by the decisions of this Court, that the negligence of the officers of the government does not affect the liability of a surety in a bond any more than it does that of his principal." He then cites *Dox. v. Post-*

*master General, United States v. Kirkpatrick* and *United States v. Vanzandt.*

In all these cases, the statutory provisions which were violated by the officers of the government, were laws existing at the time that the sureties in the official bonds entered into their contract of suretyship, and unquestionably modified and decreased the risk imposed upon such sureties by their undertaking.

In several of them, it is admitted that the whole loss incurred was in consequence of a violation of those statutes by the officers of the government.

At the same time, the Supreme Court, in another series of decisions, which have been cited by counsel for complainants as supporting their contention upon this point, have laid down a principle which may best be expressed by quoting from the opinion of Mr. Justice Shiras in the case of *Barnitz v. Beverly*, 163 *U. S.* 118, 127, which has been quoted in the brief of one of complainants' counsel.

Mr. Justice Shiras says: "But this Court held, through Mr. Justice Miller, that all the laws of a state existing at the time a mortgage or any other contract is made, which affect the rights of the parties to the contract, enter into and become a part of it, and are obligatory on all Courts which assume to give a remedy on such contracts; that the construction, validity and effect of contracts are governed by the place where they are made and are to be performed, if that be the same; that it is therefore said that these laws enter into and become a part of the contract."

Mr. Justice Shiras reviews the well known cases of *Bronson v. Kinzie*, 1 *How.* 311, 316, and *Brine v. Insurance Company*, 96 *U. S.* 627, 637, and many others, defining and applying this general principle.

These cases state a well settled principle of law, but it is made plain by the authorities I have cited, that it must be applied in connection with the equally well settled principle that, "the government is not responsible for the *laches* or the wrongful acts of its officers." And in the language of Chief Justice Waite in *Hart v. United States*, cited above, "Every

172     STOECKLE, ET AL. vs. ARMSTRONG, ET AL.

Opinion:—official negligence does not relieve sureties

surety upon an official bond for the government is presumed to enter into his contract with a full knowledge of this principle of law and to consent to be dealt with accordingly. The government enters into no contract with him that its officers shall perform their duty."

As was said by Mr. Justice Story in *United States v. Kirk-patrick*, "the surety may place confidence in the agents of the government, and rely on their fidelity in office: but he has of this the same means of judgment as the government itself; and the latter does not undertake to guarantee such fidelity."

The bond in the cause under consideration, was given, as we have seen, by Dougherty and his sureties to the State of Delaware, conditioned for the faithful discharge of his duty as collector of county taxes; and it is not even suggested that the principles governing the liability of sureties on official bonds given to the Federal government, do not apply equally to bonds given to a State government.

It is obvious, therefore, under the authorities I have reviewed, that the sureties on Dougherty's bond could not be relieved from the obligation they had assumed to the State of Delaware, by any action or non-action of the Levy Court upon their petition, unless the statute under which that petition was presented, differed in such essential particulars from the statutes construed in those authorities, as to deprive the State, in this instance, of the protection of the principle, that it "is not responsible for the *laches* or the wrongful acts of its officers," and to give to its provisions the effect of a contract on the part of the State of Delaware with the sureties,that the Levy Court of New Castle County should perform their duty under it, thereby making the performance of certain acts by the Levy Court part of the condition of the bond. Can the act of March 23, 1877, be so read? I have quoted it *supra*, and it only remains to compare it with the statutory provisions, in consequence of the disregard of which by government officials, the cases arose in the Supreme Court, which taken together, establish and define, as we have seen,

a rule that renders the position of sureties in official bonds so different from that of sureties in private undertakings.

The contention of counsel for the complainants, is, that the statutes considered in those decisions were enacted for the security and protection of the government, and that those decisions were based upon such a construction of them; whilst on the other hand, our statute of March 23, 1877, under consideration, was enacted "solely for the benefit and relief of the sureties."

In a case cited *supra*, in another connection, *Julius v. Lord Bishop of Oxford*, Lord Penzance, in the course of his opinion, expressed a thought which must at times occur to every diligent student of the authorities;

He remarked, "passing therefore from definitions which are apt not to be uniform, and which are with difficulty so framed as to be applicable to all cases, I think it far more satisfactory that your Lordships should look at what the Courts in previous cases have done, rather than what the learned Judges may have said."

Now, I have already cited the authorities at such length as to set forth both what the Judges have said, and what the Courts have done, and nothing could be more obvious than, that whatever may be the proper construction to be placed upon the language used by the Judges in some of those cases, yet the provisions of all the statutes, *ex necessitate rei*, secured and protected the sureties and the government alike, if obeyed by the government officials; and in the case of *Hart v. United States*, this is clearly stated and fully set out by Chief Justice Waite in his opinion.

When we compare those statutes in detail with our State Act of March 23, 1877, it is impossible to discover any difference between the thing required to be done by the U. S. statutes on the one hand, and the thing which the Levy Court was empowered to do in the other, which upon any conceivable theory could sustain the contention of complainant's Counsel.

The statutory provision, that a defaulting paymaster should be recalled and another appointed in his stead, is

assuredly no less a protection to his sureties than is the provision in our State statute, that a defaulting tax collector should, under certain conditions, be deprived of the power of · collecting more taxes and another collector appointed in his stead, a protection to the sureties on the collector's bond.

And yet, when the officer of the government instead of obeying the statutory mandate by removing the defaulting paymaster and appointing another person in his stead, placed further funds in his hands which he embezzled, the Court held that the sureties were not discharged, and they were obliged to pay to the government the money which their principal was thus enabled to embezzle. *Vanzandt v. United States, supra.*

Again, the provision that the government officer shall not permit distilled spirits to be taken from his custody until the tax upon them be paid, is certainly not less a protection to the sureties in the distiller's bond than is the provision in our State statutes that the power to collect certain uncollected taxes be taken from a defaulting tax collector, and given to some duly qualified citizen to be selected by the Levy Court, a protection to the sureties in the collector's bond.

And yet, when the government officer instead of obeying the statutory mandate, did permit the distiller to take away the spirits that were made by the statute a specific security for the internal revenue tax due thereon, and he then failed to pay the tax, the Court held that his sureties were not discharged, and they were compelled to pay to the government the tax owed by their principal, for which the government had held ample security which its agent, in violation of a statute existing when the sureties entered into their contract, gave away. *Hart v. United States, supra.*

Or, reversing the point of view, if security and protection were afforded to the government by those provisions of the United States statutes, it cannot be denied that security and protection were in like manner afforded to the State by the provision in our State statute.

To continue this comparison throughout the other cases

Opinion:—the rule applied to our own statutes.

must surely be superfluous; the essential features being manifestly the same in all.

Assuming, therefore, the claim of complainants' counsel to be correct, that the permissive language of the statute under consideration is in effect mandatory, the only difference that can be discerned between the mandate it contains, and the mandate of the statutes, with which I have thus compared it, is, that in the State statute it is conditioned upon the action of the sureties, and under it there could be no *laches* or wrongful acts in the premises on the part of the public officers, until there had been action by the sureties, the Levy Court not being required or empowered to take any action looking to the removal of a collector unless certain preliminary action shall be taken by his sureties. To use the words of complainants' counsel, "what is required to be done by the Levy Court is solely on the motion and initiative of the surety."

And they rely npon this feature of the statute, taken in connection with its title, "An act in relation to the liability of principal and surety", to support their contention that the act is solely for the benefit of the sureties and that the authorities cited do not apply to it.

It cannot be contended, however, that this condition of the statutory mandate alters the effect of the thing commanded, or if it be not done, the effect of the *laches* or wrongful act of the public officers upon the interests either of sureties or of the public.

This being the case, can it be maintained successfully, in the face of the authorities I have cited and analyzed, that the act of March 23, 1877, has the effect of a contract on the part of the State of Delaware, with the sureties on the collector's bond, that the officers composing the Levy Court should obey the mandate of the statute, merely because that mandate was conditioned upon "the motion and initiative of the sureties"? Clearly not,—and yet there seems to be no other ground upon which to rest the contention that the statute has such an effect can rest.

An examination of the whole course of decisions upon the question of the rights and liabilities of sureties in official

bonds, has left me with no doubt, that the authorities I have cited are decisive of the point under consideration and must control the decision of this Court.

The principles established by those authorities are based upon the broad consideration of public policy which are always prepotent in the determination of questions which affect the interests of the Public—the State—and especially the public revenue, which is vital to the existence of government, and they have met with universal acquiescence.

The sureties in the official bond of John J. Dougherty, as tax collector, etc., must be presumed to have entered into their undertaking with the State of Delaware with a knowledge of those principles of law, and the foregoing consideration and comparison of the statutes fails to disclose any provision of the Act of March 23, 1877, which, in the light of those authorities, either expressly or by necessary implication makes the State responsible to those sureties for any failure on the part of the Levy Court of New Castle County to comply with the provisions of that act.

In view of this conclusion, it seems entirely unnecessary for me to enter upon the discussion of the question whether or not the Levy Court, after the petition of the sureties had been presented to it, did or did not inquire into the matter, within the meaning of the statute.

Having been irresistibly led by the authorities and arguments already considered to the conclusion that, even if the Levy Court of New.Castle County did disobey the mandate of the statute in this particular and refused to inquire into the matter laid before them by the petition of the sureties, yet nevertheless, the complainants would not be discharged from their liability thereby, and this Court would not be warranted in interfering with the full legal remedy of the State upon their bond, I deem it entirely unnecessary, to pass upon the question whether or not, upon the pleading and evidence in this cause, such was the fact.

Another question has been exhaustively argued by counsel, that is whether or not the language of the statute, which has been quoted above, although in terms conferring a dis-

Opinion:—whether the statute is mandatory is immaterial.

tinctly discretionary power upon the Levy Court, is in effect mandatory; the language being "and if the Levy Court after inquiring into the matter, shall be of opinion that there is danger of loss to such sureties by reason of their said suretyship, the said Levy Court shall have power to issue an order restraining such late collector from the further collection of any taxes committed to him" etc.

The complainants contend, as we have seen, that upon the state of facts at that time existing they had a claim *de jure* that the power should be exercised, and that consequently under the established rules of statutory construction, it became the duty of the Levy Court to exercise the power granted to them—a duty which could have been enforced by proceedings in mandamus—so that the officers composing the Levy Court disobeyed a statutory mandate when they refused to grant the relief prayed for in their petition.

It is manifest that the effect of this contention is precisely the same as the preceding one, and that the conclusion reached as to the responsibility of the State, the Public, to the sureties for the disobedience of a mandate of the statute by the officers composing the Levy Court renders this question in like manner immaterial, inasmuch as, if that conclusion be correct, it could not affect the liability of the sureties in the collector's bond if it should be held on the proofs presented, that the Levy Court did disobey the statutory mandate when they refused to grant their petition.

Many authorities have been cited by counsel especially those from our own State, upon the rights and liabilities of sureties in private undertakings. Now there is no branch of Equity Jurisprudence which has been more fully developed than that which deals with the rights and liabilities of sureties in private undertakings, and it is well settled under what circumstances Courts of Equity will interfere to restrain a creditor from recovering from a surety, upon the breach by his principal of the condition of his bond, when the creditor's own *laches* or wrongful acts have intervened to the detriment of the surety or the increase of his risk.

But in the case of private undertakings the creditor is held to be responsible to the sureties for the acts of his agents —their acts are his acts—whereas in the case of official bonds entered into for the Federal or State Governments, the government, as I have already shown, is not held responsible for the acts of its agents, when not authorized by law; and where loss or increase of risk comes to the sureties in an official bond by reason of the conduct of public officers, the chance of their mistake or misconduct, their *laches* or wrongful acts must in the absence of express statutory provisions, be taken to be part of the risk which the sureties in an official bond assume.

To quote again the language of Mr. Justice Story: "The surety may place confidence in the agents of the government and rely on their fidelity in office; but he has of this the same means of judgment as the government itself, and the latter does not undertake to guarantee such fidelity."

The case of the complainants may be a very hard one, but it is one where there seems to be no warrant for the intervention of this Court.

There remains but one other point to be considered.

The execution issued on the judgment entered against the sureties is for the sum of $16,353.43, which is $1,921.92 in excess of the amount which the Levy Court found to be due from Dougherty, after making the allowance required by law, when he made his final settlement in March, 1891.

It is alleged by the defendants in their answer and not denied by the complainants, that after the March settlement it was discovered by the Levy Court that fraud on the part of Dougherty had vitiated that settlement, which was afterwards opened and corrected, and that the amount found to be actually due upon a final examination of his accounts was the sum of $16,353.43, for which the writ of execution was issued October 19, 1893.

The injunction prayed in this cause therefore must be refused, and the bill of complaint dismissed with costs, on the usual terms.

A decree was entered accordingly.